In the Matter of WESTCHESTER COUNTY SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS, INC., Respondent, against J. WILLIAM MENGEL et al., Constituting the Zoning Board of Appeals of the Town of Yorktown, Appellants.

Second Department, May 10, 1943.

*Chester A. Slocum* and *James D. Hopkins* for appellants.

*Joseph Reeback* for respondent.

JOHNSTON, J.   This proceeding was instituted under section 267 of the Town Law to review the determination of the Zoning Board of Appeals of the Town of Yorktown, Westchester County, confirming the refusal of the building inspector to grant a certificate for occupancy of an addition to a barn on respondent's property.   The Special Term reversed the determination of the Board and directed the issuance of the certificate.   The Board appeals.

The primary question here involved is the construction of a zoning ordinance.   Respondent's property is in a residence " O1 " district — that is, a district for one-family dwellings on lots of 40,000 or more square feet.   The ordinance, so far as pertinent, provides that in such a district " no building structure or premises, or part of a building or structure shall be used, and no building, shall be erected which is arranged, intended or designed to be used, in whole or in part, for any purpose except one or more of the following with usual accessories:   *   *   *   (1) Philanthropic or eleemosynary use or institution other than a camp, sanatorium, hospital, correctional institution or institution for the insane."

The essential facts are not disputed.   On October 3, 1941, respondent — Westchester County Society for the Prevention

of Cruelty to Animals, Inc. — purchased a nineteen-acre tract on which there were a small two-story one-family dwelling, a garage and a one-story barn measuring twenty-two feet by forty feet, equipped with box stalls. On October 8, 1941, respondent made application in writing to the building inspector for permission to construct an addition to the barn. In the space marked " Proposed Use " in the application, petitioner inserted the words " Addition To Barn (Room for One Person)." On the same day the building inspector approved the application and issued a permit. Construction of the addition, consisting of a one-story structure sixty feet long, was commenced during the first week of December, 1941, and completed early in March, 1942. The addition contained twelve stalls about eight feet wide, separated by an aisle three feet wide running the length of the building. The stalls were separated from each other and from the aisle by wire and wooden partitions.

On March 6, 1942, respondent applied for a certificate of occupancy to permit the barn and addition to be used " for housing dogs and other animals." On March 18, 1942, the building inspector declined to issue the certificate on the ground that the use intended did not comply with the conditions set forth in the building permit; that the interior construction indicates the building is to be used " for dog kennels and the housing of dogs, only " and the issuance of the permit would constitute a violation of the zoning ordinance. Respondent admits that it intends to use the barn as extended for the harboring of stray, unwanted and homeless dogs, and for their destruction and other disposition, and that the barn has accommodations for about 100 dogs. Respondent also admits that under the provisions of section 120 of the Agriculture and Markets Law it enters into contracts with villages and towns for the seizing and impounding of stray dogs, for which service it is compensated. On April 7, 1942, respondent appealed to the Zoning Board of Appeals, and on May 4, 1942, the Board sustained the action of the building inspector.

Respondent then instituted this proceeding. Appellants, in their return, set up separate defenses alleging that respondent failed to comply with the terms of the building permit in that it constructed a dog kennel under the guise of an addition to a barn; that respondent is not a philanthropic and eleemosynary institution within the meaning of its charter and the zoning ordinance, but a private enterprise operated for profit; and respondent, without a permit and in violation of the zoning

ordinance, constructed a large foundation upon which it intended to erect another building.

The Special Term referred the matter to a referee to take proof and report solely on the issue as to whether the building permit was obtained by fraud and misrepresentation. The referee resolved that issue adversely to appellants. The court confirmed the referee's report by the order entered November 10, 1942, and subsequently made a final order reversing the determination of the Board and directing the issuance of the certificate. The Board appealed from both orders, but has abandoned the appeal from the order of November 10, 1942.

Appellants do not dispute that the object of respondent is as indicated in its corporate name and that its purpose is humane in the sense that it seeks to relieve the suffering and increase the comfort of animals, particularly dogs. Appellants insist, however, that respondent is not an eleemosynary institution. We believe it is. It clearly appears that respondent is a nonprofit organization; that its members pay dues and contribute to its support; that the proceeds of the contracts which it has with the various villages and towns are insufficient to meet its operating expenses and that the deficit is made up by dues, donations and bequests. The fact that it obtains some income from these contracts does not, as appellants contend, make it a commercial enterprise. There are many charitable institutions which derive some income from the operation of their facilities. A voluntary hospital does not cease to be a charitable institution because it receives compensation by renting some of its rooms and administering to private patients.

The question is: Is the respondent a philanthropic and eleemosynary institution within the meaning of the ordinance? In other words, does the ordinance permit the use of the barn and addition for the purposes heretofore described.

In the construction of statutes the basic rule of procedure and the primary consideration of the courts is to ascertain and give effect to the intention of the lawmakers. The general rules are summarized in *People ex rel. Wood* v. *Lacombe* (99 N. Y. 43, 49): " In the interpretation of statutes, the great principle which is to control is the intention of the Legislature in passing the same, which intention is to be ascertained from the cause or necessity of making the statute as well as other circumstances. A strict and literal interpretation is not always to be adhered to, and where the case is brought within the intention of the makers of the statute, it is within the statute, although by a technical interpretation it is not within its letter. It is the spirit and pur-

pose of a statute which are to be regarded in its interpretation; and if these find fair expression in the statute, it should be so construed as to carry out the legislative intent, even although such construction is contrary to the literal meaning of some provisions of the statute. A reasonable construction should be adopted in all cases where there is a doubt or uncertainty in regard to the intention of the lawmakers." (See, also, *Riggs* v. *Palmer,* 115 N. Y. 506.)

It is also an accepted rule that " While the preamble is no part of a statute, it frequently contains recitals which illuminate the purpose and intent of the enactment. * * * It is, however, considered as an aid to interpretation when the body of the act is not free from ambiguity." (McKinney's Cons. Laws of N. Y., Book 1, §. 122; *People* v. *Sharp,* 107 N. Y. 427.)

The preamble to the zoning ordinance contains the following provisions with reference to the division of the town into districts: The town shall be divided so as " to promote the public health, safety, morals and general welfare, with reasonable consideration among other things, to the most desirable use for which the land of each district may be adapted, the peculiar suitability for the particular use in each district, [and] the conservation of property values * * *." The preamble then describes the necessity for the zoning ordinance as follows: "* * * that all * * * uses destructive of the peace and security of dwelling districts or destructive of property values shall be isolated and segregated, * * *."

It is self-evident that respondent's contemplated use would be detrimental to and seriously impair the value of the neighboring properties. Surely the lawmakers, being mindful of the necessity of segregating such uses as are " destructive of the peace and security of dwelling districts * * * or * * * property values," as well as of " the conservation of property values," never intended to permit a kennel or shelter for one hundred homeless dogs to be established in the heart of the most highly restricted residential district in the town. To hold they so intended would frustrate the main purpose of the zoning ordinance, not only as expressed in its preamble but implicit throughout the whole ordinance.

It is no answer to say that respondent's nineteen-acre plot affords adequate isolation, which is ample protection to the neighboring property owners. It was for the lawmakers to say what part of the town was to be restricted to residences. Nor is it any answer to say that if respondent operates its property

so as to become a nuisance, the law furnishes a remedy to abate such nuisance.

In our opinion, a fair and reasonable interpretation of the ordinance as a whole and in the light of its general purpose shows that it relates solely to philanthropic and eleemosynary uses and institutions for human beings, and that it was the intention of its framers to so restrict it.

It will be observed that the uses and institutions expressly prohibited by the ordinance are " a camp, sanatorium, hospital, correctional institution or institution for the insane," all of which are devoted exclusively to human beings. Surely the lawmakers who forbade the use of property in the most highly restricted of the town's four residential districts for a camp, doubtless to be used by children, and a sanitarium and hospital to take care of the sick, never intended to permit the erection and maintenance of a kennel for the harboring of unlicensed and homeless dogs. To attribute such an intention to the lawmakers would be not only unreasonable but absurd and, as stated by Chief Judge CULLEN in *Flynn* v. *Prudential Ins. Co.* (207 N. Y. 315, 318).: " ' Every interpretation that leads to an absurdity should be rejected.' (Kent's Com. 462; Potter's Dwarris on Statutes, p. 128; *Matter of Folsom,* 56 N. Y. 60, 66.) "

Respondent does not dispute the canons of construction previously adverted to but invokes another, equally well-established and recently reiterated by this court: " That which is not embraced within the exception must be deemed to be within the scope of the general rule." (*Strauch* v. *Town of Oyster Bay,* 263 App. Div. 833.) But respondent overlooks the fact that an exception may be made from the letter of the statute to avoid an unreasonable or absurd result. As stated in *Morgan* v. *Hedstrom* (164 N. Y. 224, 230): " When the courts make an exception from the letter of a statute, because the subject excepted is not within its spirit and meaning, they do so to avoid a result so unreasonable or absurd as to force the conviction upon the mind that the excepted subject could not have been intended by the Legislature, and that if it had been presented to that body, it would have disclaimed any intention to include it."

Respondent argues that since it is a philanthropic institution and the contemplated use of its property is not *expressly* prohibited, the permission granted by the ordinance must be held to extend to it. A complete answer to that argument is found in Bacon's Abridgement and quoted in *Riggs* v. *Palmer* (*supra,* p. 510): " ' By an equitable construction, a case not within the

letter of the statute is sometimes holden to be within the meaning, because it is within the mischief for which a remedy is provided. The reason for such construction is that the *lawmakers could not set down every case in express terms.'"* (Underscoring mine.)

Stated another way, respondent's argument is the ordinance itself, that is, respondent relies on the ordinance but ignores the rule that a statute is to be construed according to its meaning, not according to its letter.

Bearing in mind the objects sought to be accomplished in adopting the zoning ordinance and reading it as a whole, it is not only unreasonable but unthinkable that the lawmakers intended to permit a use such as contemplated by respondent. The strict letter of the statute must yield to the manifest intention of its makers.

If the result seems harsh it is of respondent's own making. If in its application respondent had stated that its purpose was to construct a building to provide accommodation for 100 dogs, instead of stating that it desired to erect an addition to a barn and provide a room for one person, the permit never would have been issued.

The conclusion reached renders it unnecessary to consider appellants' point that the determination of the Board of Appeals is conclusive, or respondent's contention, that the Board of Appeals based its determination on the amendment to the zoning ordinance. As the amendment was adopted after construction was commenced and liabilities incurred, we assume respondent had a vested right which the Town Board was without power to impair or defeat by the amendment.

The order entered November 13, 1942, should be reversed on the law and the facts, with costs, the proceeding dismissed, and the determination of the Zoning Board of Appeals reinstated and confirmed.

The appeal from the order of November 10, 1942, should be dismissed, without costs.

CLOSE, P. J., HAGARTY, TAYLOR and LEWIS, JJ., concur.

Order entered November 13, 1942, reversed on the law and the facts, with costs, the proceeding dismissed, and the determination of the Zoning Board of Appeals reinstated and confirmed.

Appeal from order entered November 10, 1942, dismissed, without costs.