In the Matter of DOBESS REALTY CORPORATION, Petitioner, against BERNARD MAGID et al., Respondents.

Supreme Court, Special Term, New York County, March 6, 1946.

*Samuel Gottlieb* and *I. Gainsburg* for petitioner.

*Stanley H. Fuld, Edward S. Joseph* and *Milton L. Rosenberg* for Bernard Magid, respondent.

*Jack Reinstein, John Di Leonardo* and *Alvin McKinley Sylvester* for State Liquor Authority, respondent.

SHIENTAG, J.  This is another of the many cases which have been before the courts recently involving a consideration of certain important provisions of the Alcoholic Beverage Control Law.

The petitioner attacks the validity of a liquor license issued by the State Liquor Authority to the respondent covering premises 601 West 135th Street, in the borough of Manhattan, city of New York.  The petitioner contends, in substance, that the State Liquor Authority had no power to issue the license for the store in question for three reasons: (1) It is not located on a " main thoroughfare "; (2) it is not in a " business center ", and (3) it is within 1,500 feet of another licensed liquor store. (See Alcoholic Beverage Control Law, § 105, subds. 2, 4.)

The last two grounds are clearly untenable and will be taken up out of turn.

The store in controversy is located in a " business center ". That term is not defined in the Alcoholic Beverage Control Law nor has it received judicial construction.  On its face it means an area where business establishments are centered.  It could be any street or any avenue, or any combination of both.  The term " business center " has been practically construed by the State Liquor Authority to mean any area which is zoned for business and has been put to that use.  That construction is a fair and reasonable one.  The store in controversy is located on the north side of 135th Street and is about 45 feet from the northwest corner of 135th Street and Broadway.  Broadway, in this general vicinity, for a number of blocks, is zoned for commercial use and is lined by stores on both sides of the street.  The cross-town streets in this neighborhood are also zoned for commercial purposes for a distance of 100 feet both east and west of Broadway and for the most part the stores therein are actually so used.

The petitioner urges, however, that to come within the purview of the term " business center ", the premises sought to be licensed must be located on a street which is completely or substantially zoned for business purposes; that the term does not apply where only a portion, for example only 100 feet of any street, is zoned for commercial use.  Both the language

in the statute and the usage of those in charge of its administration negative any such restricted construction. The pattern established by the Board of Estimate for a business center in this area becomes apparent upon examination of the zoning map of the city of New York. The general area running up Broadway and radiating east and west therefrom for a distance of 100 feet establishes the shopping or trading zone. The facts stamp the locality as a business section, as " one cohesive shopping center ", and the State Liquor Authority was amply justified in so finding.

The store in question is not located within 1,500 feet of another licensed liquor store, within the meaning of the Alcoholic Beverage Control Law. Subdivision 4 of section 105 of that statute provides, in substance, that in the city of New York no liquor license shall be granted " for any premises which shall be located within 1500 feet of any premises holding a similar license on the same street or avenue * * *." That rule by its express language is a limitation on the spacing of licensed premises on the same street or avenue. It does not apply to premises on any other street or avenue.

The petitioner, however, urges the court in construing this rule to bend the 1,500 feet around Broadway and on to 135th Street. The courts have held otherwise. (*Matter of Pierse* v. *Zimmerman,* 255 App. Div. 708; *Matter of Oberson, Inc.,* v. *Seyopp Corporation,* 251 App. Div. 170; *Matter of Pincus* v. *Kall,* 263 App. Div. 807, motion for leave to appeal denied, 287 N. Y. 855.)

If the construction urged by petitioner were adopted, the State Liquor Authority would be absolutely prohibited, for example, from issuing a liquor license to premises on 42d Street which were within 1,500 feet of licensed premises on Broadway in the borough of Manhattan. Neither the language of the rule nor the purpose sought to be accomplished by it requires any such rigid, inflexible construction. The State Liquor Authority is, of course, not required to issue a license in a situation such as is here presented; neither is it prohibited by law from doing so. That is a matter left to the discretion of the State agency to be exercised fairly and without discrimination according to the needs of the community.

The question as to whether the respondent's store is located on a " main thoroughfare " is a much more troublesome one. That term is not defined in the law. It has recently been the subject of conflicting interpretations by learned colleagues at Special Term in the First and Second Judicial Districts, but has never been judicially construed by any appellate court.

The physical location of the respondent's liquor store has already been described. It is only necessary to add that West 135th Street is a two-way thoroughfare for vehicular traffic and is 100 feet wide. The typical cross-town street in uptown Manhattan, such as West 134th Street, is approximately 60 feet in width. Every ten blocks, however, there is interspersed a street 100 feet wide. One Hundred Thirty-Fifth Street is not a continuous highway. It is in two segments, which are interrupted by Cathedral Park. The western segment, three blocks in length, extends to Riverside Drive and the eastern segment goes to the Harlem River bulkhead. A part of the western segment is heavily traveled by Fifth Avenue buses, which pass the respondent's store.

We have already seen that respondent's liquor store is " located in a business center ". Is it also located on a " main thoroughfare "? What did the Legislature mean by " main thoroughfare " in the setting in which it was employed? It undoubtedly was intended to be a public, as distinguished from a private, passage through; it was also clearly intended to be a street or highway or passageway affording an unobstructed exit at each end into another street or public passage, as distinguished from a cul-de-sac, which is a passage closed at one end and affording no exit there. Thus far we are on solid ground.

If we go to the dictionary for guidance, we find that " main " is defined as " principal " or " chief ". Synonyms for " main " are " important " and " essential ". If the only recourse we had was to the dictionary, it might be necessary to hold, as some of my learned colleagues have held, that the State Liquor Authority had to limit the issuance of licenses to premises located on the chief or principal streets, avenues or thoroughfares of a city, whether those chief or principal streets, avenues or thoroughfares were north-and-south bound or east-and-west bound. The problem, particularly in a large city, is not a simple one. How long must the street be, for example, to be denominated a principal or chief street, avenue or thoroughfare?

The term " main thoroughfare ", even if construed literally by way of dictionary definition, still remains more or less uncertain and indefinite; it cannot be said to be plain and clear. It is true that the words used in a statute are in their literal sense " the primary, and ordinarily the most reliable, source " of interpreting its meaning. We have been cautioned, however, that " it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but

to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning." (*Cabell* v. *Markham,* 148 F. 2d 737, 739, per LEARNED HAND, J.; see, also, *Westchester County S. P. C. A.* v. *Mengel,* 266 App. Div. 151, affd. 292 N. Y. 121.)

The history of the use of the words " main thoroughfare " in the Alcoholic Beverage Control Law is most significant and enlightening. During the extraordinary session of the Legislature held in August, 1933, repeal of the Prohibition Amendment seemed imminent. The Legislature, anticipating such repeal prior to the regular session in 1934, enacted chapter 819 of the Laws of 1933. That law added section 132-a to chapter 180 of the Laws of 1933, and provided for the regulation and control of the manufacture and sale of liquors and wines during the period, if any, that might elapse between the date of repeal of the Eighteenth Amendment and April 1, 1934. Chapter 819 has been referred to as the " Interim Liquor Control Law " and authorized the New. York State Liquor Authority to issue licenses for the manufacture and sale of liquors and wines in this State during that interim period. Under subdivision 3 of section 132-a, the Legislature provided that for the purpose of fostering and promoting temperance in the consumption of liquors and wines and for the purpose of instituting a sound and careful control and regulation of the manufacture, sale and distribution of liquors and wines during the interim period, the State Liquor Authority should, in addition to its other powers, have the power: " (e) To adopt such rules and regulations and issue such orders for the control and regulation of the manufacture, sale and distribution of liquors and wines, including the location, type and character of the premises to be licensed and the hours and days and conditions of their sale, as will effectively insure temperance in the consumption of liquors and wines in the state and promote obedience to law and order."

The State Liquor Authority then adopted various rules and regulations pursuant to this grant of power. One of those rules was rule 47, which provided with respect to the location of premises: " No premises shall be licensed to sell liquors and/or wines at retail for off premises consumption unless said premises shall be located in a store, the entrance to which shall be from the street level and located in a business center on a main thoroughfare."

The purpose of the foregoing rule, and of others then adopted, was to promote temperance and respect for and obedience to

law, and at the same time to prevent the creation of a monopoly in the sale of liquor at retail. When a permanent State agency was set up, rule 47 was adopted by the Legislature and incorporated into the present law. Rule 47 is now subdivision 2 of section 105 of the Alcoholic Beverage Control Law. The Legislature, however, added after the words " main thoroughfare ", with which rule 47 ended, the following: " * * * or on an arcade or sub-surface thoroughfare leading to a railroad terminal."

It was the intent of the Liquor Authority in submitting this provision for enactment into law, and its practical construction thereof, that the use of the word " main " as applied to " thoroughfare " was only for the purpose of distinguishing between a thoroughfare which was used by the public in general, as compared to a thoroughfare which was either a private way, a private lane, a back alley, an arcade, a subsurface thoroughfare or a cul-de-sac. The one exception which the Legislature made was an arcade or a subsurface thoroughfare leading to a railroad terminal. The purpose for that exception is clear: although such arcade or subsurface thoroughfare is a private passageway, it is used by large numbers of the public and the Legislature felt, should be included in the same category as a public thoroughfare.

During the interim period, to which reference has been made, the State agency issued many licenses for stores located on side streets which in no way could be included within the category of principal or chief streets or avenues of the city. With knowledge of this usage and of the practical construction given to these words by the State agency which first employed them, the Legislature took them over with only the modification referred to, a modification which supports the construction placed upon the rule by the Liquor Authority. In the twelve years that the present law has been in force, the State Liquor Authority has likewise given practical construction to this term in the law by issuing numerous licenses to premises on side streets which could be characterized neither as principal nor as chief thoroughfares in the city.

From the very beginning, from the time it adopted rule 47 down to the present, the State Liquor Authority has construed the term " main thoroughfare " to mean a public passageway which has a free exit at both ends. Subdivision 2 of section 105 of the State statute was merely a restatement of rule 47. By enacting without material change the language which the State Liquor Authority had previously construed the Legislature in

effect adopted the practical construction placed upon it by the administrative agency charged with its formulation and enforcement.

It is true that where language is clear, definite and precise, a statutory provision must " be enforced and brought to life early or late, and must not be smothered by the accumulation of customs or violations." (*Matter of Wendell* v. *Lavin,* 246 N. Y. 115, 120.) Practical construction has weight, however, where the language used is vague and indefinite (*Matter of Kolb* v. *Holling,* 285 N. Y. 104, 112; *Matter of Mounting and Finishing Co.* v. *McGoldrick,* 294 N. Y. 104, 108). It is well accepted that the doctrine of practical construction is entitled to especial weight when the Legislature has recognized or adopted the practice of the public agency enforcing the particular statute (*McCaughn* v. *Hershey Chocolate Co.,* 283 U. S. 488, 492; *National Lead Co.* v. *United States,* 252 U. S. 140, 146).

We have, therefore, at one extreme the position urged by the State Liquor Authority: that a " main thoroughfare " is a public passageway which has a free exit at both ends. The other extreme is one urged by the petitioner in this case: that a " main thoroughfare " is a main arterial highway zoned for business, or a principal or chief arterial street mainly zoned for business. An intermediate position is taken by the respondent Magid on this motion, that his liquor store is located on a principal or important thoroughfare and that, in any event, it is the authority's discretion, not arbitrarily or capriciously exercised, that should determine whether a store is on a " main thoroughfare," as that term is used in the Alcoholic Beverage Control Law.

It is urged that too many liquor licenses are being issued by the State Liquor Authority, a circumstance which, it is claimed, will bring in its train economic evils and resulting abuses. This increase in licenses, it is suggested, is due in part, at any rate, to the interpretation of the term " main thoroughfare " by the State Liquor Authority. The number of liquor licenses to be issued and the policy to be adopted in connection with their issuance, are matters which under the law are specifically placed in the hands of the State Liquor Authority, subject always of course to paramount legislative control. Those are administrative and legislative, and not judicial, problems. It is only where the statute has been violated or where the authority has acted arbitrarily, capriciously or in a discriminatory fashion that the judicial process may step in to play its part.

I conclude, therefore, that the construction which the State Liquor Authority has given to the term " main thoroughfare " as used in the Alcoholic Beverage Control Law is the reasonable one and should not be interfered with by the courts. It is supported by the history of the legislation in question.█ Taken in connection with the requirement that a license may not be issued unless the premises are located in a business center and spaced at least 1,500 feet from another licensed liquor establishment on the same street or avenue, and having in mind the broad discretion vested in the State agency to determine the necessity for licensed liquor stores in any locality, the construction placed upon the term " main thoroughfare " by the State Liquor Authority appears to be a sound and practical one and calculated to accomplish the purposes for which the law was enacted.

In view of the conclusion here reached it is unnecessary to consider whether West 135th Street is a chief, principal or important thoroughfare, or whether the discretion of the State Liquor Authority in so finding was exercised arbitrarily or capriciously.

The conclusion here arrived at finds support, to some extent at least, in the decisions on the subject recently rendered by some of my colleagues at Special Term (*Matter of Sussman* v. *Nappy,* 186 Misc. 139; *Matter of Platt* v. *Shapiro,* 186 Misc. 297; *Matter of Santoro* v. *Margolis,* 186 Misc. 169).

The motion for an order directing the cancelation of the respondent's liquor license and enjoining the operation of his liquor store is accordingly in all respects denied.