UNITED DYE WORKS, INC., Plaintiff, *v.* SALVATORE SCIFO et al., Defendants.

Supreme Court, Special Term, Kings County, November 18, 1947.

*S. Frederick Placer* for plaintiff.

*Angelo Cogliano* and *Herman Lazarus* for defendants.

RUBENSTEIN, J. The plaintiff, a former tenant of business property owned by the defendants, has brought this action to recover damages pursuant to the provisions of subdivision (d) of section 8 of the Business Rent Law (L. 1945, ch. 314, § 8, as amd. by L. 1946, ch. 273) and now moves herein under rule 109 of the Rules of Civil Practice to strike out affirmative matter contained in the answer and for judgment under rule 112.

Insofar as material to the present discussion the undisputed facts are as follows: On October 4, 1946, defendants, who are husband and wife, became the owners of store property. At that time plaintiff was a tenant therein. After having thus acquired the property, the defendants caused a notice to terminate the tenancy to be served on the plaintiff and thereafter instituted proceedings in the Municipal Court of the City of New York for plaintiff's eviction from the premises. In such proceeding defendants established that they sought in good faith to recover possession of the store space for their immediate and personal use and in consequence thereof a final order was issued whereby possession of the property was awarded to them. Issuance of the warrant was stayed until May 14, 1947. On the latter date, in reliance on and under the compulsion of the said final order

and warrant, the plaintiff removed from the store space and surrendered the same to the defendants.

Paragraphs " Ninth " and " Tenth " of the complaint, the allegations of which are admitted by the defendants, state:

" That the defendants, after thus evicting, excluding from possession and dispossessing the plaintiff herein, failed, within thirty days thereafter, to occupy the plaintiff's store premises and failed to actively conduct any business therein, all in violation of the Emergency Rent Control Law of the State of New York."

" Upon information and belief that within one year from May 14, 1947 the defendants leased said store premises formerly occupied by the plaintiff to a person other than the plaintiff for use, occupancy and possession, all in further violation of the aforesaid provisions of the Emergency Rent Control Law."

Section 8 provides, with specified exceptions, that so long as a tenant continues to pay the rent to which his landlord is entitled, he shall not be removed from any business space as that term is defined by the Act relating to the stabilization of business rents. One of the specified exceptions contained in subdivision (d) of the section is that the owner is vested with a right to possession if " in good faith " he requires the property " for his immediate and personal use ". Where, however, the premises are recovered pursuant to the provisions of subdivision (d) " * * * If such landlord or such person shall fail, after thirty days subsequent to dispossessing a tenant under the provisions of this subdivision, to occupy such space and actively to conduct such business therein, or if such landlord or such person shall lease or rent such space to or permit occupancy thereof by a third person within a period of one year after such dispossession, he shall be liable to the tenant for all damages sustained on account of such removal. * * * "

It is plaintiff's contention that the defense which the owners have asserted in an effort to bar the present action fails to satisfy the plain requirement of the foregoing statutory provision and therefore must be stricken out. The allegations of such defense, and the reasonable inferences to be drawn from the facts as pleaded, are as follows: that at the commencement of the summary proceedings which were brought to effectuate the ouster of the plaintiff from the said premises, defendants intended in good faith to occupy jointly such store space for their own business purposes; shortly after plaintiff moved from the store the defendant-wife became ill and it was necessary for her to have and to be under constant medical treatment and

care; she was advised by a competent physician that she could not remain indoors or be confined in the store because it would be dangerous to her health; she relied upon such advice and as a result her husband could not engage in said business alone, for it was of the type which required the aid and assistance of both; on July 20, 1947 defendants advised plaintiff of such circumstances and offered it the opportunity to reoccupy the premises which had been previously vacated, but that plaintiff refused to accept the said offer and that thereupon defendants relet such store to a third person. (At this point it may be noted that the defendant-*husband's* answer is defective since it does not plead the foregoing facts by way of defense. His counsel claims that this was due to inadvertence and upon the oral argument made a cross motion for leave to amend the pleading accordingly. The merits of plaintiff's motion will be considered as though the defense here challenged had been properly pleaded by both defendants.)

In its literal wording it would appear that the language of the statutory provision to which reference has been made is clear and free from ambiguity and would seem to provide no escape from the exacting consequences there prescribed where the landlord fails, after thirty days subsequent to dispossessing the tenant, to occupy such space and actively conduct his business therein, or where the landlord leases the space to a third person within the year following the original tenant's dispossess.

At the outset it must be noted that subdivision (d) differs considerably from subdivision (c) of the statute. Pursuant to the latter subdivision, a landlord who seeks in good faith to recover possession for the purpose of demolishing a building thereon may evict a tenant. If he fails to commence demolition within ninety days after eviction of the tenant or having commenced same fails or neglects to prosecute the work with reasonable diligence, the landlord " *unless for good cause shown* " (italics furnished) shall be liable to the tenant for all damages sustained on account of the removal. Thus the landlord, when confronted with an action brought pursuant to subdivision (c) of the statute, is afforded an opportunity to show that he had " good cause " for not proceeding with the demolition. Why then was not a similar opportunity afforded to a landlord to show " good cause " when confronted with an action by the tenant pursuant to subdivision (d)? There is nothing in the legislative debates or records or in the statute itself which furnishes any clue to the proper answer.

Must it be assumed, therefore, that the Legislature intended deliberately to impose upon a landlord who is sued under subdivision (d) an absolute liability if he failed to enter into possession within thirty days and actively conduct business, or if he rented the space within one year to a third person? To give the statute a construction to that effect would render its application so excessively harsh as, in my opinion, very possibly to imperil its constitutionality. This thought may be clarified by simple illustration. Let it be assumed, for example, that a landlord who is an optician evicts a tenant so that he may conduct his own optical business on the premises. Thereafter and within the prescribed time afforded by the statute the optician fails to enter into possession and to conduct such business—the failure being caused by the fact that he has been accidentally rendered blind. Subsequently, and within one year, he rents the premises to a third person. Is this landlord, who through no act of his own has become physically unable to carry on his business, liable in damages to the evicted tenant?

Let us take the further hypothesis that the landlord, intending in good faith to occupy the premises for his own use, sets in motion the procedure to acquire them but dies suddenly within the thirty-day period. May it be said that the Legislature intended to penalize him for a default over which he had no control, thus subjecting his estate to liability for damages?

To reach a conclusion to that effect would be to charge the Legislature with a purpose at once unjust and, as compared with companion provisions of the statute, inconsistent and absurd. Of course, it is a rule of law well recognized in the construction of a statute or ordinance that the courts will not attribute such a purpose to the makers of the law. Thus in *Westchester County S. P. C. A.* v. *Mengel* (266 App. Div. 151, 156, affd. 292 N. Y. 121) the court states: " To attribute such an intention to the lawmakers would be not only unreasonable but absurd and, as stated by Chief Judge CULLEN in *Flynn* v. *Prudential Ins. Co.* (207 N. Y. 315, 318): ' " Every interpretation that leads to an absurdity should be rejected." (Kent's Com. 462; Potter's Dwarris on Statutes, p. 128; *Matter of Folsom,* 56 N. Y. 60, 66.) ' "

To subject the owner to the payment of an award of damages occasioned as in the illustrations above offered would operate to inflict a consequence so unjust as actually to be tantamount to confiscation — an owner would be stripped of his defense in court save upon a showing by him that there has been exact compliance with the *one condition* prescribed by the statute. I cannot conceive that such was the intent of the Legislature.

In *Matter of Sullivan Co., Inc.* (289 N. Y. 110, 114) it has been stated that " It is a principle of statutory construction that the court should look at the old law, the mischief and the proposed cure and construe the act in question so as to suppress the evil and advance the remedy." The evil in the situation facing the Legislature obviously was the possibility of a landlord using as a subterfuge this means of ousting a tenant. The Legislature no doubt realized the propriety and justice of permitting a landlord in good faith to utilize his property insofar as it would not interfere with its wider scheme of preventing oppression and public hardship. The purpose of the Legislature, which was to protect a landlord acting in good faith, can be ascertained from the legislation when it is read as a whole. (*Matter of Social Investigators Eligibles Assn.* v. *Taylor,* 268 N. Y. 233, 237; *Matter of Kaplan* v. *Peyser,* 273 N. Y. 147, 150; *People* v. *Winters,* 294 N. Y. 545, 550; *American Distilling Co.* v. *Brown,* 295 N. Y. 36; *Chase National Bank* v. *Guardian Realties, Inc.,* 283 N. Y. 350, 361; *Campbell* v. *City of New York,* 291 N. Y. 461; *People ex rel. Savings Bank* v. *Butler,* 147 N. Y. 164.)

In *R C R Publication Printers Corp.* v. *Tuxedo Land & Improvement Co., Inc.,* (N. Y. L. J. October 23, 1947, pp. 988, col. 6), in commenting upon the purpose of the statute here being considered, Mr. Justice Church has had occasion to state that " The remedy of damages was designed for the prevalent situation of a landlord ousting a tenant under the pretext the space was required for himself, followed by the *rental* to a new tenant at an increased rate."

The test which the Legislature itself prescribes is found in the first sentence of section 8, subdivision (d). The language immediately following, in the second sentence, with whose interpretation we are concerned, creates in substance a presumption by which such good faith is to be tested, and for such purpose, as I construe it, the words " in good faith ", as a gauge, are carried over by necessary implication. The inquiry then is as to whether the presumption is to be considered conclusive or rebuttable.

Tested by the wording of the statute alone it is conclusive and that is the interpretation argued for by the plaintiff. The court, however, for reasons stated in the foregoing, is not held to a literal reading when such reading would be unjust, absurd or both.

In *Heiner* v. *Donnan* (285 U. S. 312) the United States Supreme Court was asked to sustain the validity of an enactment which, by its language, created an irrebuttable presump-

tion of an intent to evade the estate tax laws on the part of anyone making a nontestamentary gift of property and dying within a two-year period thereafter. The court rejected such construction, stating (pp. 328, 329): " This is very near saying that the individual, innocent of evasion, may be stripped of his constitutional rights in order to further a more thorough enforcement of the tax against the guilty — a new and startling doctrine, condemned by its mere statement and distinctly repudiated by this court in the Schlesinger (p. 240) and Hoeper (p. 217) cases involving similar situations. Both emphatically declared that such rights were superior to this supposed necessity. * * * This court has held more than once that a statute creating a presumption which operates to deny a fair opportunity to rebut it violates the due process clause of the Fourteenth Amendment."

By way of emphasis, the Supreme Court in the *Heiner* case (*supra*) also posed an illustration to demonstrate the potential injustice and absurdity involved in denying a resort to the factual situation, citing the hypothetical case of a young man who makes a nontestamentary disposal of property and dies within the two-year period as a result of being struck by lightning.

Where two constructions of a statute are possible, one of which would render it unconstitutional or raise grave doubts on that score and the other of which would absolve it of such defect, it is the duty of the court to adopt the interpretation which saves its constitutionality (*Matter of Fay,* 291 N. Y. 198, 207; *Matthews* v. *Matthews,* 240 N. Y. 28, 35).

In reaching the foregoing conclusions and affording the defendants their day in court upon the facts pleaded in the affirmative defenses, I am thus adopting that construction of the statute which dispels any doubt as to its constitutionality. Plaintiff's motion is denied. Defendant husband's cross motion is granted and he is given leave to serve within ten days after service of the order herein an amended answer as above indicated. Settle order on notice.