In the Matter of ALRO LIQUORS, INC., Respondent, v. NEW YORK
STATE LIQUOR AUTHORITY, Appellant.

Fourth Department, February 22, 1968.

*David M. Coffey* and *Hyman Amsel* for appellant.

*Smith, Sovik, Terry, Kendrick, McAuliffe & Schwarzer* (*James A. O'Shea* of counsel), for respondent.

GOLDMAN, J. Plaintiff-petitioner applied for a package store liquor license for premises located in an enclosed shopping center known as the Greece Towne Mall in the Town of Greece which adjoins Rochester and has a population in excess of 70,000. The center which was recently constructed contains 62 retail outlets for national shops, local department stores and other establishments which sell merchandise of almost every nature and description. The mall fronts on Ridge Road West, one of the principal traffic arteries in Greece and Rochester. The front entrance is 225 feet from Ridge Road West and opens on a 40-foot-wide thoroughfare which runs throughout the center. There are three other entrances to the mall from areaways on the rear and sides of the building, which lead into parking areas. The doors to the mall are locked at 11:00 P.M. and opened at 8:00 A.M. No one, including the tenants, can enter during the closed 9 hours without being admitted by the security guards of the landlord.

The Monroe County Alcoholic Beverage Control Board which processed the application approved it and it was later approved by the Buffalo zone office and transmitted to the New York City office for final approval. In disapproving the application the Authority stated that the grounds for its disapproval were that the " premises do not comply with the provisions of subdivision 2 of Section 105 * * * that said premises are not located on a public thoroughfare or on an arcade leading to a railroad terminal; that approval of this application would contravene the provisions of the Alcoholic Beverage Control Law and disapproval of this application is mandatory ". The Authority said

in effect, as repeated by its counsel upon argument, that it found no objection to the petitioner but that " the law just won't let the Authority issue the license ". A second ground for its refusal was that it " finds that the physical layout of the proposed premises does not afford proper and adequate visibility * * * [and] would impair and impede visibility into the area by all representatives of the Authority and enforcement authorities ".

Subdivision 2 of section 105 of the Alcoholic Beverage Control Law was enacted by chapter 478 of the Laws of 1934 and amended by chapter 549 of the Laws of 1946. Although this section was enlarged by chapter 536 of the Laws of 1966, the additional provision simply proscribed more than one additional entrance and is not applicable to the situation at bar. We are dealing with a 1946 law which reads as follows: " No premises shall be licensed to sell liquors and/or wines at retail for off premises consumption, unless said premises shall be located in a store, the entrance to which shall be from the street level and located on a public thoroughfare in premises which may be occupied, operated or conducted for business, trade or industry or on an arcade or sub-surface thoroughfare leading to a railroad terminal."

The policy of the control law is set forth in section 2 of the act and recites in part that: " It is the purpose of this chapter to carry out that policy in the public interest. The restrictions, regulations and provisions contained in this chapter are enacted by the legislature for the protection, health, welfare and safety of the people of the state ". The issuance of this license is completely consonant with this stated policy. Public convenience and necessity will be served and the health, welfare and safety of the people protected by its issuance. The Court of Appeals in *Matter of Swalbach* v. *State Liq. Auth.* (7 N Y 2d 518) for the first time determined that under subdivision 2 of section 105 licenses could be issued to stores in shopping centers. In discussing the evolution of shopping centers and the fact that they are an important part of our contemporary living, Judge FULD said (p. 525) that the amazing growth of these centers in the suburbs (Greece is a suburb of Rochester) serves public convenience. He expressed our position in this statement: " It is not only anachronistic but, more important, without sanction in statute for the Liquor Authority to equate public convenience and advantage with the preservation of the same plan for location of liquor stores as existed prior to the revolutionary population shift to the suburbs." The Authority concedes that the newest innovation in shopping centers, and one which is springing up throughout the land, is the enclosed mall which greatly

serves public convenience by being heated in the Winter and air-conditioned in the Summer. Municipalities welcome them, for they add substantially to the tax income and provide their own security guards. The necessity of policing them during the night hours is greatly limited when the mall is entirely closed and locked. Certainly the fact that a liquor store in this mall must close at 11:00 P.M. rather than midnight, which is the hour permitted by law, would not be a rational reason for disapproval.

The Authority cites *Matter of Hardy* v. *Meyer* (28 A D 2d 587) in support of its objection that the mall is not "a public thoroughfare". In that case the Authority asserted that the store entrance was not from "the street level and located on a public thoroughfare" because the store faced the parking lot which adjoined the street. At page 588 of its memorandum the Third Department wrote: "The discretion reposed in the Authority as defined in *Matter of Wager* v. *State Liq. Auth.* (4 N Y 2d 465) will not be disturbed unless it appears that the facts leave no possible scope for the reasonable exercise of discretion in the manner complained of by appellant; or unless there is lacking a rational basis for the Authority's conclusion on the question of public convenience and advantage [citing cases]". The requirement that the Authority must show "a rational basis for its conclusion as to 'public convenience and advantage'" (*Matter of Forman* v. *New York State Liq. Auth.*, 17 N Y 2d 224, 229) has been reaffirmed by the Court of Appeals in its recent decision in *Matter of Sinacore* v. *New York State Liq. Auth.* (21 N Y 2d 379). To refuse to license these premises, one of 62 stores in a center through which literally thousands of people pass each day, simply because of its modern architectural conception, which truly advances the convenience and advantage of the public, is a determination "lacking a rational basis".

The Authority argues that this is an arcade and that the statute specifically excludes all arcades "except an arcade or sub-surface thoroughfare leading to a railroad terminal". What rational basis can there be for approving a subsurface arcade and rejecting a mall like the one at bar?

Justice SHIENTAG in *Matter of Dobess Realty Corp.* v. *Magid* (186 Misc. 225) clearly stated the reason for the exception of the statute dealing with arcades leading to railroad terminals. He wrote (p. 231): "The purpose for that exception is clear; although such arcade or subsurface thoroughfare is a private passageway, it is used by large numbers of the public and the Legislature felt, should be included in the same category as a public thoroughfare." The passageway in the mall meets exactly the test of use "by large numbers of the public"

Crawford's "The Construction of Statutes" on page 288 expresses precisely the construction which, should be given to this statute: "If we assume — as we must — that the law-makers are conscientious, in event the statute is ambiguous and subject to several constructions, that one which operates in a harsh, unreasonable or absurd manner certainly does not represent the legislative intent. The basic and underlying purpose of all legislation, at least in theory, is to promote justice. Because it must be presumed that the legislature has acted for the welfare of the people, the presumption that its enactments were not intended to operate other than for the best interest of the people is well founded." Certainly we should strive to avoid a construction which would make the statute unjust, unreasonable, absurd or contrary to the public interest. As was written in *Matter of Meyer* (209 N. Y. 386, 389) : " It is always presumed, in regard to a statute, that no unjust or unreasonable result was intended by the legislature. Hence, if viewing a statute from the standpoint of the literal sense of its language, it works such a result, an obscurity of meaning exists, calling for judicial construction. Where a particular application of a statute in accordance with its apparent intention will occasion great inconvenience or produce inequality or injustice, another and more reasonable interpretation is to be sought. [Citing cases.] The courts must in that event look to the act as a whole, to the subject with which it deals, to the reason and spirit of the enactment, and thereby determine the true legislative intention and purpose; and if such purpose is reasonably within the scope of the language used, it must be taken to be a part of the statute the same as if it were plainly expressed." To interpret the statute as prohibiting this reasonable construction exposes the statute to ridicule. The Court of Appeals has construed the statute in *Swalbach* as covering shopping centers, which were rare in 1944, and it seems but a logical extension of that doctrine to include malls, which were nonexistent in 1944.

It is of interest that shortly after the enactment of subdivision 2 of section 105, the Authority, in commenting on the Legislature's changing the phrase " main thoroughfare " to " public thoroughfare " (L. 1946, ch. 549, § 1), stated that " This amendment gave effect to the position previously adhered to by the Authority " (13th Annual Report of the Authority for 1946, N. Y. Legis. Doc., 1947, No. 51, p. 13). I think it also significant that the Authority did not think it necessary to secure legislative amendment after the *Swalbach* decision. It simply issued a bulletin on August 6, 1964 (Bulletin No. 390) which recited that it rescinded its prior policy prohibiting package stores in shopping centers. It would

be a natural extension of this policy now to include enclosed shopping centers. In this connection the petitioner's quotation from " Chain Store Age — Combined with — Shopping Center Age ", on page 24 of May 1965, that " Eighty-one percent of new regional centers scheduled for 1966 opening will be enclosed mall, air-conditioned centers " is indeed pertinent and relevant.

The second objection of the Authority dealing with visibility is very minor and of no weight. The visibility required by statute must be from the sidewalk into the interior of the store. No one challenges the fact that there is clear and unobstructed view into the interior of the store from the passageway in front over which the public travels. The Authority would have every opportunity for unimpeded surveillance at all times except when the shopping center is closed. Inasmuch as the store would be locked at that time, there would be no need for surveillance.

The closing paragraph of the notice of disapproval reads as follows: " Under all the facts and circumstances, the Authority determines that the approval of this application would not be conducive to proper regulation and control, that such approval of this application would create a high degree of risk and hazard in the administration and enforcement of the Alcoholic Beverage Control Law; and the Authority further determines that public convenience and advantage would not be served by the approval of this application." The Authority has not made out a case to support this conclusion. There is no " high degree of risk and hazard " and its statement " that public convenience and advantage would not be served by the approval " is arbitrary, capricious and unreasonable.

A recent decision, *Matter of Rochdale Mall Wines & Liqs.* v. *State Liq. Auth.* (29 A D 2d 647), deals with an enclosed shopping mall, just as in the case at bar. The memorandum succinctly states our position in the following (p. 648): " It has been held that a general policy on the part of the Authority to exclude liquor stores from every ' modern ' shopping center is ' unreasonable and unsupportable ' (*Matter of Swalbach* v. *State Liq. Auth.*, 7 N Y 2d 518). There being no general proscription against the licensing of liquor stores in ' modern ' shopping centers, in our opinion an enclosed shopping center which is open to the general public between the hours of 6:00 A.M. and midnight is not materially different from an unenclosed shopping center and should be reasonably construed to be a ' public thoroughfare ' within the meaning of the statute ".

The order appealed from should be affirmed.

MARSH, J. (dissenting). However important a place the modern enclosed mall may have in the contemporary retail business

world and whatever function it may serve in the evolution of new shopping trends the fact is that the Legislature of the State of New York has not in the exercise of its judgment seen fit to amend or in any way qualify the provisions of subdivision 2 of section 105 of the Alcoholic Beverage Control Law governing licenses to sell at retail liquors and/or wines for consumption off the premises. Such provisions mandate that: '' No premises shall be licensed to sell liquors and/or wines at retail for off premises consumption, unless said premises shall be located in a store, the principal entrance to which shall be from the street level and located on a public thoroughfare in premises which may be occupied, operated or conducted for business, trade or industry or on an arcade or sub-surface thoroughfare leading to a railroad terminal.''

The premises sought to be licensed are not on an arcade or subsurface thoroughfare leading to a railroad terminal, nor are they located on a public thoroughfare. Access of the public to the enclosed mall or arcade on which petitioner's store premises are located is entirely under the control of the landlord owner of the mall premises and public access is denied at such times and during such hours of the day as the landlord may deem desirable. There being no unrestricted right of public access, surveillance of the premises by the public authorities is consequently restricted and the very situation is presented the prohibition of the statute would avoid.

*Matter of Swalbach* v. *State Liq. Auth.* (7 N Y 2d 518) cited by the majority in support of its position has no application to the issue here presented. In *Swalbach* the Authority grounded its decision not on the statutory mandate of subdivision 2 of section 105 but upon a '' codification and restatement of policy '' (p. 522), which policy was formulated by the Authority itself in what was denominated by the court a capricious exercise of discretion by administrative officers acting solely on their own idea of sound public policy. (*Matter of Picone* v. *Commissioner of Licenses of City of N. Y.*, 241 N. Y. 157, 162.)

Here we are concerned with mandatory requirements laid down by the law-making power of the State without ambiguity which it is not our province to disturb whatever our idea of public policy may be.

The order appealed from should be reversed.

WILLIAMS, P. J., HENRY and DEL VECCHIO, JJ., concur with GOLDMAN, J.; MARSH, J., dissents and votes to reverse and deny the application, in opinion.

Order affirmed, with costs.