In the Matter of RAPPL & HOENIG CO., INC., Appellant, v NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION et al., Respondents.

Fourth Department, January 20, 1978

## APPEARANCES OF COUNSEL

*Martin, Dutcher, Mousaw, Vigdor & Reeves (James S. Grossman* of counsel), for appellant.

*Louis J. Lefkowitz, Attorney-General (Julius Feinstein* and *Ruth Kessler Toch* of counsel), for respondents.

## OPINION OF THE COURT

DILLON, J.

■ Petitioner appeals from a judgment dismissing its article 78 petition based upon respondents' objections in point of law (CPLR 7804, subd [f]). For purposes of respondents' motion, the facts alleged in the petition are deemed to be true and are considered in the light most favorable to petitioner *(Matter of Nistal v Hausauer,* 308 NY 146; *Matter of Board of Educ. v Allen,* 32 AD2d 985).

The petition alleges that in 1964 petitioner purchased a parcel of land in the Town of Gates, consisting of approximately 39 acres, which was divided into two nearly equal segments by a stream. Of the entire parcel, about one-half acre was considered to be wetlands according to a watershed map prepared by the Monroe County Planning Council based upon a 1961 survey. Following petitioner's acquisition of the parcel, the town permitted development of lands located both upstream and downstream of petitioner's property. It is uncontroverted that the development diverted the stream and caused it to flood about 19 acres of the southern portion of petitioner's lands.

In 1973 the town engineer determined that the flooding created a hazard to certain adjoining farmlands and to health and safety. The town then obtained an easement from petitioner to drain the lands by building a series of ditches. The efforts of the town proved unsuccessful, however, since the ditches were improperly constructed.

In August, 1975 petitioner contracted to sell the entire parcel and the proposed vendee sought a building permit. In declining to approve the vendee's plan, the town planning board noted that the flooded portion of the parcel was recommended for classification as wetlands by the town conservation advisory board. As a result, the contract for the sale of the parcel was terminated.

In January, 1976 petitioner inquired of the State Department of Environmental Conservation as to the status of its property and was informed by the department that the southern portion "is a wetlands as defined by the law". Petitioner thereupon commenced this proceeding, as authorized under

section 24-1105 of the Environmental Conservation Law seeking annulment of that determination or, alternatively, a direction pursuant to the provisions of section 24-0705 of the Environmental Conservation Law that the respondents proceed to acquire petitioner's property by condemnation.

Petitioner argues that if its property has become a freshwater wetlands as defined in the Freshwater Wetlands Act (ECL art 24), such condition was artificially created. He contends that the Legislature did not intend that the act should be applied to artificially created wetlands. In this connection, however, petitioner's reliance upon *State of New York v Lang* (52 AD2d 921) is misplaced. There the court held only that the subject property was not a tidal wetland as that term is defined in the Environmental Conservation Law. It was an interior parcel which did not "border on or lie beneath tidal waters" within the contemplation of the provisions of section 25-0103 (subd 1, par [a]) of that law.

■ In dismissing the petition, Special Term properly rejected the claim that the Freshwater Wetlands Act is wholly inapplicable to artificially created wetlands. To have held otherwise would have restrained the State Commissioner of Environmental Conservation from exercising authority over long-established wetlands which may have been created as a result of the construction of cities, suburbs, highways, etc., of this State, a result surely inconsistent with the broad policy and purpose of the act (ECL 24-0103, 24-0105). It is conceivable that any distinction between "artificially" or "naturally" created wetlands has long been blurred by our growth and development.

Although the act indicates an intent to conserve "natural resources" (ECL 1-0101), it contains no express reference to artificially created wetlands. The State commissioner is required to map freshwater wetlands (ECL 24-0301, subd 1) for the purpose of managing and protecting "the quality of the environment and the natural resources of the state" (ECL 3-0303, subd 1). Additionally, he may take into account environmental changes as they develop. The statute authorizes him to readjust the maps to reflect "natural changes which may have occurred through erosion, accretion, or *otherwise*" (ECL 24-0301, subd 6; emphasis supplied).

■ While the subject property appears to qualify as "freshwater wetlands" within the statutory definition, thus subjecting it to the jurisdiction of the State commissioner, such a

result might well be unjust in the circumstances. It is a proper function of the court to "strive to avoid a construction which would make the statute unjust, unreasonable * * * or contrary to the public interest" (*Matter of Alro Liqs. v New York State Liq. Auth.,* 29 AD2d 271, 275, affd 27 NY2d 984).

The act reflects a concern for the State's loss of wetlands by "unregulated draining * * * or other acts inconsistent with the natural uses of such areas" (ECL 24-0105, subd 2). The petitioner alleges that the subject property is located in a prime industrial area and that the flooding of a portion thereof only recently has occurred "because of an artificial diversion of a natural stream". It is also asserted that a municipality not only created the flooding by approving changes in land use but then failed to eliminate the condition because it employed inadequate means.

It is unreasonable to conclude, without supporting evidence, that prime industrial land has so quickly assumed a new, different and irretrievable "natural use" in such circumstances. It cannot be determined on this record whether the flooding of petitioner's property can be eliminated without harm to the environment, but surely such a determination should be made, consistent with the intent of the act (see ECL 24-0105, subds 4, 5), before this property becomes subject to condemnation (see ECL 24-0705, subd 7).

The judgment of Special Term should be reversed and the respondents should be permitted to serve their answer to the petition.

CARDAMONE, J. P., SIMONS, DENMAN and WITMER, JJ., concur.

Judgment unanimously reversed, without costs, and motion denied.

Appeal [in reargument proceeding] dismissed as moot.