■ DAIRY BARN STORES, INC., Appellant, v STATE LIQUOR AUTHORITY, Respondent.—In a proceeding pursuant to CPLR article 78 to review a determination of the respondent State Liquor Authority which declared petitioner's proposed stipulation that "no customers will be served unless they step out of their automobiles and are of legal age and sober at the time of the purchase" to be an unacceptable restriction for the purpose of obtaining an off-premises beer license, petitioner appeals from a judgment of the Supreme Court, Suffolk County, entered August 7, 1979, which dismissed the petition. Judgment affirmed, without costs or disbursements. It is clear that a "licensed premises" may be confined to a particular portion of the property controlled by the licensee. (See *Matter of Fortino v State Liq. Auth.*, 273 NY 31, 35.) Here, the respondent State Liquor Authority (Authority) ruled that the "licensed premises" were confined to the petitioner's enclosed central store and did not include the outdoor carports adjacent thereto. The Authority's interpretation as to whether a particular location is "in the premises specifically licensed" (see Alcoholic Beverage Control Law, § 54, subd 5) is entitled to great deference and will be upheld unless irrational. (See *Matter of Kitano Arms Corp. v State Liq. Auth.*, 68 AD2d 841, 844; cf. *Matter of Howard v Wyman*, 28 NY2d 434, 438.) If, as result of changing patterns of doing business, the definition of "in the premises specifically licensed" is to be enlarged to include carports, it is for the Legislature to so amend the law, or for the respondent Authority, in its determination of appropriate administrative policy, to expand its interpretation, if necessary or desirable. However, at the present time under the applicable provisions of law, we agree with Special Term that there is a rational basis for the Authority's refusal to permit the sale of beer for off-premises consumption to a customer who stands outside the store and receives the beverage through a glass door. (See *Dairy Barn Stores v State*

*Liq. Auth.*, 67 AD2d 691.) Accordingly, we affirm. Mollen, P. J., Rabin and Margett, JJ., concur.

Gibbons, J., dissents and votes to reverse the judgment, grant the petition, and direct the respondent to accept petitioner's proposed stipulation, with the following memorandum, in which Weinstein, J., concurs: Petitioner, Dairy Barn Stores, Inc., owns and operates a chain of drive-through retail grocery stores in Nassau and Suffolk Counties. Desiring to engage in the retail sale of beer, it sought to obtain a license from the respondent State Liquor Authority (Authority) for the sale of beer for off-premises consumption for its business establishment located on Montauk Highway, Sayville, New York. The business premises consists of an enclosed central store area with carports on either side, all of which comprise one complete building unit. Access to the store is by a driveway leading to and from the public highway. The method by which the petitioner conducts business is that after a prospective customer drives into the driveway and stops under the carport, the store clerk serves the customer and makes the sale through a glass door. The carport consists of a structure enclosed on two sides and covered by a roof. Petitioner first sought and had been denied a license to sell beer by the Authority in January of 1977. This court, in *Dairy Barn Stores v State Liq. Auth.* (67 AD2d 691, 692), affirmed that denial on a general ground, holding that: "It was not arbitrary and capricious to deny the application for a retail beer license for off-premises consumption in the instant situation *where the sale and delivery of beer would be made directly to the purchaser in an automobile and not on the premises* (see *Matter of 1761 Forest Ave. Corp. v State Liq. Auth.*, 29 AD2d 875). When the patron *remains seated* in a vehicle rather than physically entering the premises, *it is impossible to properly supervise and control the distribution of alcoholic beverages.*" (Emphasis added.) The rationale of the determination was that a sale of beer to a patron while seated in his automobile interferes with the proper supervising of alcoholic beverages because the age or sobriety of the purchaser cannot be readily determined, and, clearly, when the beer is sold and delivered in the customer's automobile, it may not be said that the sale is taking place "in the premises specifically licensed" within the meaning of subdivision 5 of section 54 of the Alcoholic Beverage Control Law. In an apparent attempt to comply with the requirements of the statute and to conform with the approved rationale, the petitioner then sought a declaratory ruling, pursuant to section 204 of the State Administrative Procedure Act, as to whether a self-imposed limitation that "no customers will be served unless they step out of their automobiles and are of legal age and sober at the time of the purchase" would satisfy the Authority's objections to the granting of a license for the sale of beer for off-premises consumption at its drive-in store. The Authority initially denied the request for a ruling. The denial was held arbitrary and capricious by this court, and the Authority was ordered " 'to make the requested declaration, complete with the reasons for its determination' " (*Dairy Barn Stores v State Liq. Auth.*, 67 AD2d 692). The Authority thereafter issued a ruling declaring the proposed stipulation unacceptable upon the ground that "such an operation, wherein beer would be sold to customers who receive beer through a window *while outside the premises* 'specifically licensed' would seriously interfere with the proper supervision and control of the sale of alcoholic beverages". (Emphasis added.) Essentially, the position of the Authority is that even where the customer leaves his car and walks to the opening in the store where the transaction takes place, such method of sale is not "in the premises specifically licensed" within the meaning of subdivision 5 of section 54 of the

Alcoholic Beverage Control Law. In upholding this ruling, Special Term stated, *inter alia:* "The respondent made a determination that the petitioner's proposed restriction would be contrary to the provisions of Alcoholic Beverage Control Law section 54. Notwithstanding that the word 'premises' is not defined in the Alcoholic Beverage Control Law, and assuming *arguendo* that a local zoning ordinance would include a covered patio area as part of a building, the interpretation made by the respondent based upon the provisions of the Alcoholic Beverage Control Law, *supra,* that premises specifically licensed must be within an enclosed area, and further that the proposed restriction would not be conducive to proper regulation and control, clearly have a rational basis." I disagree with Special Term and would hold that the Authority's ruling was arbitrary, capricious and affected by an error of law. The task of statutory interpretation involves a process of seeking the intended purpose of the particular enactment, and it must be approached with the assumption that the Legislature intended a reasonable result *(Matter of Alro Liqs. v New York State Liq. Auth.,* 29 AD2d 271, 275, affd 27 NY2d 984). There is little doubt concerning the validity of the rationale of a ruling, which was affirmed by this court, to which reference was made above, that a sale of beer to a customer while seated in an automobile is *not* a sale *in* the licensed premises because a sale, under such circumstances, would present a method of vending which would "seriously interfere with the proper supervision and control of the sale of alcoholic beverages". However, the control sought to be maintained over the sale of alcoholic beverages by the Legislature was to establish reasonable norms under which such products are to be sold to the public. The time, place, and manner of such sales were of legitimate legislative concern and the mischief sought to be avoided, among other things, was that such transaction not be conducted where surveillance was not feasible, but that such sales be in an open place, available for inspection, and that the patron be of age and in a sober condition. The petitioner's suggested alternative restriction that "no customers will be served unless they step out of their automobiles and are of legal age and sober at the time of the purchase" would offer a reasonable method of control of the sale of beer compatible with the legislative intent, and to interpret the statute in such a way that a sale while the customer is standing under the carport roof by the open door is to be considered *not* "in the premises specifically licensed", is to place an arbitrary, strained and unreasonable meaning on the phrase as the same may be applied to petitioner's business structure. The inconsistency of the Authority's position is revealed in the affidavit by Lawrence J. Gedda, its chief executive officer, submitted in opposition to the instant proceeding. Gedda stated, in part: "An Off-Premises Beer License requires that the beer not be consumed on the premises. How can an employee of the petitioner, reasonably prevent the consumption of the beer by a customer in his car under the overhang, after a purchase has been made? This would be in clear violation of the Alcoholic Beverage Control Law if petitioner's allegation is correct." If, as the Authority urges, a customer were to drink the beer he purchased in his car "under the overhang" and thereby violate the law by drinking "on the premises", does it not also follow that the sale of the beer itself, under the overhang, is also in the premises. It would appear therefore, that there is no necessity for any expansion of the interpretation of "in the premises" beyond that already applied to the facts of this case by the Authority. Nor is any further legislative action required since under the applicable provisions of the law, the proposed beer sales would be "in the premises". I think that the Authority's interpretation of the statute is

untenable and that the use of the phrase "in the premises" could not have been meant to evince a considered legislative judgment that the sale of beer at drive-through stores, such as those involved here, should not be allowed. My conclusion in this regard is based on the fact that the statute, including this particular phrase, was enacted in 1934, when such drive-through grocery stores were not yet in existence. I also note further that the Authority's interpretation cannot easily be made compatible with the interpretation given the words "licensed premises" by the Court of Appeals in *Matter of Fortino v State Liq. Auth.* (273 NY 31). Although the court was there dealing with a different provision of the Alcoholic Beverage Control Law, its conclusion (p 35) that "the licensed premises are the premises owned by the licensee at that address" nevertheless, appears applicable. Applying that definition here, I think it clear that the premises of a drive-through grocery store includes the enclosed area under the carport roof. More fundamentally, however, I believe the question of what constitutes the premises of a drive-through grocery store must be answered by examining the statute and its underlying purposes and applying these with a view toward modern developments in the delivery of goods to the consumer. I believe this process cannot rationally be satisifed by merely pointing to the word "in" in the phrase "a license * * * to sell beer at retail in the premises" (Alcoholic Beverage Control Law, § 54, subd 5). Drive-in and drive-through business establishments have rapidly become a part of our modern society. There are now drive-in movies, banks, grocery stores and fast food stores to name a few obvious examples. The .question of what should constitute the "premises" of a drive-in or drive-through store is a novel one. I think that it could not rationally be held that the "premises" of a drive-in movie theatre does not include the area in which the customers park while viewing the movie. I think it similarly untenable that the "premises" of a drive-through grocery store can fail to include the physical environs in which the customer receives and pays for his purchases. The purpose of the Alcoholic Beverage Control Law, set out in section 2, is one "of fostering and promoting temperance in [the] consumption [of alcoholic beverages] and respect for and obedience to law." Under the terms of the proposed stipulation, the prospective purchaser of beer will be required to alight from his car to be scrutinized for age and sobriety before being allowed to purchase beer. Petitioner has argued convincingly that its proposed method of operation is superior to that of conventional grocery stores, supermarkets and delicatessens, in that, unlike under the conventional method of operation, under its method, the store manager retains control of the product until after the customer has been scrutinized and has paid for the product. The Authority has not adequately responded to petitioner's arguments. It has provided no factual backing in its ruling and has presented this court with little besides the bare conclusion that the proposed method of operation would not be in the public interest. Under these circumstances, I find that there will be no detrimental consequences by allowing the sale of beer at drive-through grocery stores.