THOMAS F. PATERSON et al., Plaintiffs, *v.* UNIVERSITY OF THE STATE OF NEW YORK et al., Defendants.

Supreme Court, Special Term, Nassau County, July 19, 1962.

*Louis J. Lefkowitz, Attorney-General,* for defendants.  *Bentley & Owens* for plaintiffs.

Frank A. Gulotta, J.  This is a motion by defendants pursuant to rule 106 of the Rules of Civil Practice to dismiss the complaint as insufficient in law.

The complaint seeks a declaratory judgment to the effect that article 148 of the Education Law (added by L. 1960, ch. 1082) is unconstitutional.

The questioned enactment attempts to create a new profession to be called "Landscape Architecture" and contains 13 sections which set up a comprehensive plan for defining the activity, licensing its practitioners, and invoking criminal penalties against those who after July 1, 1961, engage in the proscribed conduct without a license.

It should be borne in mind that this is not a licensing statute in the certification sense, i.e., by allowing people to observe it simply by refraining from claiming they are licensed.

This article makes it criminal to continue in a calling which up to this very date by the standards of ordinary persons would be considered exceedingly innocuous and commonplace.

It says (§ 7320, subd. 3): "A person practices landscape architecture within the meaning and intent of this article who performs professional services such as consultation, investigation, reconnaisance, research, planning, design, or responsible supervision in connection with the development of land areas where, and to the extent that the dominant purpose of such services is the preservation, enhancement or determination of proper land uses, natural land features, ground cover and planting, naturalistic and aesthetic values, the settings and approaches to structures or other improvements, natural drainage and the consideration and determination of inherent problems of the land relating to erosion, wear and tear, blight or other hazards."

An indication of how it works may be had by a brief reference to the facts as alleged by the first two plaintiffs.  There are

seven plaintiffs in all, but it would unduly prolong this opinion to dwell on each of them, when the plight of two is typical enough to serve for all.

Plaintiff Paterson is 26 years old, and a graduate of Cornell University, with the degree of bachelor of science, having majored in landscape design and ornamental horticulture. The complaint continues:

"That said plaintiff was employed for three months during the year 1955 by the Landscape Division of the New York State Department of Public Works, during which period plaintiff performed services in the inspection of trees on New York State Highways for trimming or removal, and was engaged in soil experimental work for the improvement of soil quality by the use of additives, and did certain design work for planting on state highways to prevent soil erosion; that said plaintiff was employed for three months during the year 1957 by Ralph Smith, landscape architect of Rosemeade, California, as a laborer in connection with the landscaping for swimming pools, terraces and sprinkling systems; that said plaintiff served in the United States Army for two years, and during the period from September 1958 to September 1959, was Post Landscape Architect at Fort Lee, Virginia, during which time plaintiff designed the landscaping for various new installations, including the N. C. O. Club, the post athletic field, and the landscaping of federal housing projects for dependents of servicemen (Capehart housing).

"That for more than two years said plaintiff has been employed as landscape architect for Panfield Nurseries, Inc., of Huntington, Long Island, and has practiced landscape architecture as defined in Section 7320 (3) consisting of the following:

"Plaintiff has designed and supervised the landscaping of private residences, large estates, public buildings, industrial sites, churches and temples, plaintiff designed the landscaping for the restoration of the Vanderbilt Museum at Centerport, Long Island, and was duly paid therefor by Suffolk County; plaintiff designed the complete landscaping for the Nassau Community Temple at Hempstead, Long Island; plaintiff designed and executed three 1,000 square feet gardens for the New York International Flower Show for which Panfield Nurseries, Inc., was awarded the New York International trophy for the highest points in show in 1960; plaintiff's designs also received silver and gold medal awards for 1961 and 1962 and plaques for the best garden fencing design."

Plaintiff Woesner is 39 years of age, and also holds a degree of bachelor of science from Cornell University majoring in

ornamental horticulture and floriculture. His complaint states: " That in 1947 said plaintiff organized Cor-Nell Landscape Service at Flushing, New York, as a partnership for the practice of landscape architecture, and continued to practice through this organization until 1949 when it was continued as a sole proprietorship of said plaintiff; that in 1959 the business was incorporated under the name Cornell Landscape Service, Inc., with offices at Brookville, Glen Head, New York, and plaintiff as sole owner; that through said corporation and individually plaintiff has practiced landscape architecture as defined in Section 7320 (3), for more than 13 years, consisting of the planning and supervision of rough grading, fine grading, soil conservation, erosion control, installation of lawns, trees, shrubs, flowers, ground covers, the design of patios, walks, drives, rock gardens, naturalistic gardens, formal gardens, informal gardens, contemporary gardens and all of the operations that are connected with landscape architecture; plaintiff has done the complete landscaping for many prominent and well-to-do families in Long Island, including the detail planning for reflecting pools, sunken patios, raised planting beds, and landscape plantings. The total dollar value of the landscape work completed pursuant to the planning and designs of the plaintiff is in excess of $400,000 per year."

Each of these plaintiffs filed for a license prior to July 1, 1961, pursuant to subdivision 3 of section 7323 where provision is made for licensing persons already in business where they meet certain experience requirements " of a grade and character acceptable to the board."

They were notified nine months later, on March 19, 1962, that their applications were denied and that they were not even eligible to take the test under subdivision 1 of section 7323 which incidentally had already taken place for that year, before they were notified.

The attack on this law is based on an unlawful delegation of legislative power (N. Y. Const., art. III, § 1) and upon the rights, privileges and immunities clauses, and the due process clauses of both the State and Federal Constitutions (art. I, §§ 1, 6 of the former and 14th Amdt., § 1 of the latter).

As to the first objection, the point seems to be well taken. One looks in vain here for any legislative guideposts for the Board of Examiners to follow in reaching a decision as to the " grade and character " of the work that should be acceptable to them. This phrase is repeated over and over again throughout article 148 and it apparently refers to a personal acceptability or satisfaction of the board members.

This sort of delegation of legislative discretion was condemned in *Seignious* v. *Rice* (273 N. Y. 44, 50) in the following language:

"Authorization given to an administrative officer to choose without providing a measure or standard for such classification is beyond the power of the Legislature.

"We are told that the Legislature here has merely conferred an administrative power upon an administrative officer. The powers which the Legislature has endeavored to confer are more than administrative. Only the Legislature may decree that a person shall not pursue a lawful vocation without first passing an examination, and a provision in a statute that an administrative officer shall, in accordance with his untrammeled discretion, and according to his own ideas, determine who shall take an examination and who shall be exempt, constitutes a delegation of a legislative power."

Apparently the Legislature itself must have had some grave misgivings about the broad fields which they were about to invade with this legislation and the extremely tenuous relationship, if indeed there is any, between public health, safety and welfare and these same fields, for in section 7326 it is provided that the new law shall be construed so as *not to apply* "to the business conducted in this state by any agriculturist, horticulturist, tree expert, arborist, forester, nurseryman or landscape nurseryman, gardener, landscape gardener, landscape contractor, garden or lawn caretaker or grader or cultivator of land, as these terms are generally used".

This leaves the average person in a very hazy state in attempting to decide in advance of possible conviction and punishment, what is criminal and what is not. We have no such clear-cut escape as nonuse of particular words, such as was relied on to sustain the constitutionality of a licensing statute in *National Psychological Assn.* v. *University of State of N. Y.* (8 N Y 2d 197) which also dealt with a broad undefined field, viz., "Psychology", and which, incidentally, is obviously affected with a greater public interest than the subject matter of this case. What we have here is first the taking in of a field so broad as to be completely indefensible and then a whittling down of it by numerous exceptions, to leave a residue of criminality, which depends, for instance, on correctly deciding when laying out a patio is "landscape gardening" and when it is "landscape architecture". To satisfy the test of constitutionality a criminal statute must be sufficiently definite and clear so as to give unequivocal warning of the rule which is to be obeyed. (*People* v. *Firth*, 3 N Y 2d 472, 474.)

There may be certain large-scale land developments — Jones Beach comes to mind, so does the new community center at Mitchell Field — where the public has a vital interest in proper layout and development of land, but this law goes too far. It is always possible to advance some farfetched arguments to connect a purported exercise of the police power with the public welfare. Such an attempt was made in *People* v. *Gillson* (109 N. Y. 389), where a statute which made it a crime to give away a cup and saucer with two pounds of coffee, was struck down as violative of the due process clause. In refuting the argument that the act was justified as a health measure, because it could be inferred that if give-away storekeepers were losing money they would inevitably adulterate the food, the court stated (p. 403): "It is further argued, however, that the act is valid as a health law, a regulation of trade in food and to prevent dealing in impure, unwholesome and adulterated food. The same principles apply here as have already been stated, *i.e., there must be some fair and reasonable relation of means to end,* which courts can see and admit the force of. We think it clear there is no such relation here. We think the act has not the slightest tendency to accomplish the alleged purpose." (Italics supplied.)

It was pointed out that the "liberty" protected by the Constitution is not limited just to freedom from physical restraint by incarceration, but also includes the right to earn a livelihood in any lawful calling without unnecessary restraints, speciously related to the police power. The court descried a thinly disguished attempt to eliminate free and full competition and there is something of the same aroma in the present case.

Assuming that there is a legitimate area here for legislative regulation, this does not warrant the sweeping and unnecessary interference with harmless pursuits which this act has accomplished and destroying with one stroke long years of effort and industry.

As was said by Judge Fuld in *People* v. *Bunis* (9 N Y 2d 1, 4) in dealing with a statute whose purpose was to prevent the resale of magazines, where the publisher had allowed the dealer a credit for returning the cover instead of the whole magazine: "What is wrongful is not the sale of coverless magazines, but rather their sale by a vendor who takes part in a scheme to defraud a magazine publisher. Admittedly, by denominating as criminal all sales, section 436-d necessarily tends to prevent corrupt sales. But, even were we to suppose that it had power to prohibit such corrupt sales, it is unreasonable and beyond the legitimate exercise of the police power for the Legislature to

interdict all sales, permissible and illicit alike, in order to prevent those which are illicit. The Legislature may not validly make it a crime to do something which is innocent in itself merely because it is sometimes done improperly, sometimes attended by improper motives or done as part of an illegal scheme. (See *People* v. *Estreich,* 297 N. Y. 910, *supra*; *People* v. *Kuc,* 272 N. Y. 72, *supra.*) ''

The court is of the opinion that the issue of constitutionality is properly raised in this action for a declaratory judgment where there is no dispute as to the facts. (*Dun & Bradstreet* v. *City of New York,* 276 N. Y. 198.)

Defendant has conceded as much by its motion, which admits all the material facts stated in the complaint.

The motion is denied.