Nicholas M. Pette, J.
The complaint charged that defendant Smoke aided and abetted in book-making activities and that defendant Gallart permitted premises under his control to be used for such purpose, all in violation of section 986 of the Penal Law.
The essential facts are not in dispute. It was established at the trial that Smoke was engaged in furnishing the results of horse races to book-makers by telephone and that he paid Gallart for the use of his premises and telephones. There was no evidence of betting or wagering.
The basic question here posed is whether the transmission of racing results in the manner indicated constitutes such aiding or abetting as is proscribed by section 986. This section sets forth various categories of illegal conduct, which, for present purposes, will be subdivided as follows: (1) engaging in bookmaking; (2) keeping a place for the purpose of recording or registering bets on wagers; (3) recording bets, receiving or forwarding any money, thing or consideration of value, bet or wagered, or offered for the purpose of being bet or wagered; (4) permitting premises to be used by others for any of the purposes previously mentioned or becoming the custodian of anything of value wagered upon results; (5) aiding and abetting in any of the forbidden acts.
*940 At the outset, it is well to keep in mind that criminal statutes should he construed narrowly so that acts, otherwise innocent and lawful, do not become crimes unless there is a clear and positive expression of legislative intent to make them criminal (People v. Shakun, 251 N. Y. 107, 113). This is especially true of statutes dealing with crimes in the class of mala prohibita (People v. Bort, 53 N. Y. S. 2d 345, 348), such as the one with which we are here concerned (McDonald v. United States, 335 U. S. 451, 459).
In the situation at bar, the corpus delicti of the crime of bookmaking is the acceptance of bets on a professional basis (People v. Abelson, 309 N. Y. 643, 650). Since there was no evidence of book-making here, no basis exists for charging Smoke with aiding and abetting under the first category of section 986. Apparently the trial court concluded that Smoke was aiding and abetting under the third category, that is, by forwarding to book-makers information which in its opinion was “ a very valuable thing.” In the same connection, the District Attorney contends that it would be unrealistic to hold that ¡Smoke was not assisting or aiding a book-maker in any manner.
It will be helpful, at this juncture, to consider the exact text of that portion of section 986 upon which the trial court appears to have placed reliance, namely: “ any person who * * * forwards or purports or pretends to * * * forward in any manner whatsoever, any money, thing or consideration of value, bet or wagered or offered for the purpose of being bet or wagered, by or for any other person, or sells pools, upon any such result * * * is guilty of a misdemeanor ”. (Emphasis supplied.)
As will be observed, the foregoing provision makes it a crime to forward any thing or consideration of value wagered or offered by or for any other person. Can it be said that one who furnishes racing results is forwarding any species of value which is susceptible of being wagered by or for someone else? Manifestly, the trial court has taken the term “ thing * * * of value ” out of context and ascribed to it an expansive meaning not warranted by the statute. Since this phrase is immediately followed by the words “ bet or wagered * * * by or for any other person,” it must, under the rule of ejusdem generis, be restricted in its meaning only to things of value which are or may be wagered. By no stretch of the imagination may the dissemination of a racing result be deemed a “ thing * * * of value, bet or wagered * * * by or for any other person ’ Hence it is my view that no case has been made out against Smoke under the third category.
*941 Absent any proof of aiding and abetting on the part of Smoke, the ease against G-allart for permitting his premises to be used by Smoke in the manner charged in the complaint must likewise fall.
There is surprisingly little authority in this State on the subject under discussion. The only case which research has brought to light is People v. Pollack (204 Mise. 64). There it appears that one defendant, from a vantage point inside a race track, signaled information to a codefendant stationed in a house outside the race track, from which it was relayed by telephone to a music company for transmission over leased wires. The question presented was whether the transmission of racing results with knowledge that such information would or could be used by book-makers rendered the supplier of such information amenable to the sanctions of section 986. In a well-reasoned opinion, Magistrate (now Supreme Court Justice) J. Irwin Shapiro answered the question in the negative. In the course of his opinion the learned Justice stated what is equally applicable here (p. 67):
“ [I]t is not the information conveyed to the book-makers through the instrumentalities of the defendants * * * that is illegal, but it is the use to which that information is put which is illegal. Many of the New York newspapers devote a great deal of their space to the outpourings of handicappers engaged by them which attempt to predict the outcome of races to be run. Could it seriously be contended that because that information is used by persons to gamble and in book-making that the sports reporters and the newspapers which disseminate such information could be held liable for aiding and abetting-in the crime of book-makingf
“ If the contention urged by the People is sound, every manufacturer of playing cards and dice, knowing or being chargeable with the knowledge that in many cases those cards and dice would be used by professional gamblers, would be guilty merely because of the manufacture and distribution of those cards and dice. It is obvious on reflection, that it is not the manufacture of those articles and their distribution that is illegal, but the use to which they are put.”
Decisions in other jurisdictions to similar effect are reviewed in the Pollack case. Particularly apposite is People v. Brophy (49 Cal. App. 2d 15), where it was held that the furnishing of racing news to book-making establishments by telephone did not constitute an aiding and ábetting in violation of the statute dealing with book-making. The court also declared that the *942 furnishing or receiving of racing or sporting information is not gambling and is not a crime.
See, also, State ex rel. Dooley v. Coleman (126 Fla. 203, 206) where the Florida Supreme Court stated: ‘ ‘ It is no violation of the criminal code that information may be transmitted by means of the telephone concerning the results of a horse race * * * but it is the use which persons make of that information which constitutes the violation of law. ’ ’
Returning to the case at bar, the District Attorney seeks to distinguish Pollack upon the ground that the defendants in that case impliedly knew that on occasion the information furnished would be used by book-makers while in the instant case there was actual knowledge. The attempted distinction appears tenuous and finds no support in the reported decisions.
It is further argued that the present situation is quite different from that engaged in by 1 ‘ legitimate disseminators of news.” The logic of this argument escapes me. Is it thereby suggested that the imparting of the same information would be lawful by one means of communication but unlawful by another? I know of no such distinction in law, and if any there were its validity would be open to serious question.
Indeed, if the activities of defendant Smoke, which this court in no wise approves or condones, can be said to offend the gambling statutes, it should logically follow that other modes of communication, such as radio, television and newspapers, which transmit similar information are equally culpable. But since section 986 does not make it unlawful to forward racing information, I see no need to belabor the point. Suffice it to say that the People have failed to establish any violation of the Penal Law as alleged in the complaint.
Accordingly, the judgments of conviction should be reversed on the law and the facts and the complaints dismissed.