William E. Ringel, J.
The defendant is a builder and general contractor engaged in erecting a building in this county. It co-ordinates the work of several subcontractors, one of whom is Morrell-Brown.
A permit was duly issued to the defendant, authorizing the storage of equipment and material on the public roadway. Thereafter, by letter dated February 19,1963, the Commissioner of Highways of the City of New York, “ suspended ” this permit. Nevertheless, the defendant continued to occupy part of the roadway with a trailer, and Morrell-Brown, with the defendant’s knowledge, placed building material on the roadway.
Six summonses were served on the defendant, charging it with violation of the Administrative Code. Since all of these eases involve the same questions of law and fact, this decision will be determinative of all of them.
Two questions of law are presented:
First, has the Department of Highways the power to “ suspend ” rather than to “ revoke ” a permit once validly issued? (This is a question of first impression in this jurisdiction.)
Second, assuming that the Commissioner has the power to “ suspend” such permits, may a general contractor to whom the permit had been issued, be found guilty of the violation of the provisions of the Administrative Code of the City of New *436 York (§ 82d7-10.0, rennm. 692f-1.0), if the violation was created by his subcontractor, of which the defendant had knowledge.
Defendant contends that both questions must be answered in the negative.
Briefly, the section in question (as amd.), (The City Record, Jan. 11, 1963), empowers the Commissioner of Highways to grant permits to builders to occupy not more than one third of the roadway with building material and equipment.
This permit may be “revoked” by the Commissioner “at pleasure.” Violation of this section subjects the violator to both civil and criminal penalties for each and every day of the violation.
Nowhere in the statute does the word “suspend” appear. Was it the intention of the local Legislature to give this power to the Commissioner? If that was its intention, the court would be obliged to interpret the statute accordingly. (Westchester County S. P. C. A. v. Mengel, 266 App. Div. 151.) Nor need a literal interpretation of the statute be resorted to in order to give effect to the legislative intent. (People ex rel. Wood v. Lacombe, 99 N. Y. 43.)
As the court pointed out in Lacombe (supra) in ascertaining legislative intent, the court should inquire into the causes or necessity for the enactment of the particular statute, as well as other circumstances.
It is obvious to any native or visitor to this city that traffic congestion is an acute problem here. It is equally obvious that construction and repair work, in and about our public thoroughfares, contribute greatly to the traffic problem. Both of these activities are necessary to the economic life of this city. Patently, our city Legislature was faced with the problem of permitting both activities to continue simultaneously, without the one unduly hampering the other. The section of the Administrative Code now before us was deemed to be a solution to this problem.
But in addition to determining the cause and need for a particular statute, we must also bear in mind another rule of statutory interpretation, in determining legislative intent.
That rule holds that “ all new laws are supposed to be enacted with knowledge on the part of the lawmakers of the scope and existence of old laws.” (Matter of Erikson v. Helfand, 1 A D 2d 59, affd. 1 N Y 2d 775, citing Davis v. Supreme Lodge, 165 N. Y. 159; City of New York v. Maltbie, 274 N. Y. 90; McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 17.)
Our Administrative Code contains many provisions whereby a Commissioner or other city official has been empowered, in *437 specific language, to suspend or revoke a permit or license over which his department has jurisdiction.
The following are some examples:
The Administrative Code: Police Department (§ 436-1.0, subd. f; § 436-2.0, subd. k, par. 38); Department of Health (§ 561-2.0); Department of Markets (§ B36-8.0); Department of Water Supply, Gas and Electricity (§ B30-16.0).
When, as in this case, the city Legislature omitted the word “ suspend ” from among the powers given to the Highway Commissioner, we are compelled to conclude that such omission was deliberate and that the granting of the power to suspend was not intended.
There is a vast difference between “ suspend ” and “ revoke.”
The American College Dictionary defines the former as, ‘ ‘ to cause to cease for a time from operation or effect as a law, rule, privilege or the like.”
It defines the latter as, “ to take back or withdraw; annul, cancel or reverse; rescind or repeal: to revoke a decree.”
The former is a temporary cessation of a privilege; the latter is a complete cancellation thereof.
Violation of this section of the code carries with it a doublebarrelled penalty, civil as well as penal. When a permit has been revoked, the permittee knows what he is in for, if he puts or permits material and or equipment to clog the roadway. On the other hand, where the permit has been suspended, what is his position? Modern building and repair equipment and material are not building-block toys. Moving them about is difficult and expensive. Will the suspension be for an hour, a day, or a week? What is the permittee supposed to do during such an indefinite cessation of his privilege? The Commissioner’s letter of February 19,1963, is completely silent on these matters.
It is for reasons such as are here indicated, that the law in this State requires that penal statutes must be strictly construed. A citizen is entitled to know with reasonable certainty that which the law prohibits. Such statutes must be so worded that they convey an unequivocal warning to a citizen of the rule which is to be obeyed, and, especially as to acts mala per se — there must be a clear and positive expression of the legislative intent to make them criminal. (People v. Feeney, 24 Misc 2d 74; People v. Vetri, 309 N. Y. 401; Paterson v. University of State of N. Y., 35 Misc 2d 608; People v. Smoke, 38 Misc 2d 939.)
The dilemma in which the defendant finds itself when its permit is suspended takes on even greater force when it is recognized that the defendant in this case (as argued by the *438 People), may be held liable, civilly as well as criminally, not only for its own acts, but also for the acts of its subcontractors.
The People contend that the power to revoke includes the lesser power to suspend the permit (omne majus continet in se minus). Many cases are cited in support of this position. (Reynolds v. State Bd. of Equalization, 162 P. 2d 735; 173 P. 2d 551, affd. 29 Cal. 2d 137; Matter of Bar Assn. v. Cantrell, 53 Cal. App. 758; Klatt v. Guaranteed Bond Co., 213 Wis. 12; Schnitzler v. Yellowley, 290 F. 849; Goldsmith v. Board of Educ., 66 Cal. App. 157.) An examination of these cases discloses that they are all civil suits and none involves an interpretation of any penal statute in which a person is charged to answer for a crime or offense. They are therefore not applicable to the cases before us.
The People place particular emphasis on the Reynolds case (supra). That case is clearly not authority for their position. Reynolds involved an interpretation of the California Constitution. There the California court held that the sections of the State Alcoholic Beverage Control Act, authorizing the right of suspension by the Liquor Board, were not inconsistent with the provisions of section 22 of article XX of the California Constitution. That statute specifically authorized the State Board of Equalization, in hcec verba, to “ suspend ” liquor licenses. No similar language appears in the Administrative Code section under examination in the case at bar.
It is clear that the word ‘ ‘ suspend ’ ' was deliberately omitted from the section in question by our city Legislature. The grant of power to the Highway Commissioner to “ revoke ” a permit must be deemed to be the scope of his authority. Under such circumstances, the court would not be justified in legislating, by its decision, a grant of power (to suspend a permit) not specifically authorized by the language of the section. (Oneida Nat. Bank Co. v. Manikas, 10 Misc 2d 671; Delaney v. Central Val. Golf Club, 28 N. Y. S. 2d 932, affd. 263 App. Div. 710, affd. 289 N. Y. 577.)
Legislative enactments are presumed to be valid. The wisdom of legislative enactments is not a matter of concern of the courts. (Lincoln Bldg. Associates v. Barr, 1 N Y 2d 413; Matter of Kuhn v. Curran, 294 N. Y. 207.)
The conclusion is therefore inescapable that the Commissioner of Highways had no power or authority to suspend defendant's permit under this section of the Administrative Code. This determination makes it unnecessary to pass on the other question raised by the defendant.
Complaints dismissed and defendant is discharged.