Max Bloom, J.
Defendant is charged, in a two-count information, with maintaining an establishment for playing policy and with possession of 250,000 to 300,000 booklets of bolita, or bolipol, in violation of sections 974 and 975 of the Penal Law.
The proof consisted of a stipulation, supplemented in small part by oral testimony. It demonstrates that on September 17, 1965, defendant was arrested at a printing establishment located at 369 East Tremont Avenue, The Bronx, 1ST. T. The boli-pol booklets were on the premises and were seized by the police and introduced in evidence. The booklets were in the usual form. Each booklet contained 10 sheets. Each sheet was approximately one inch wide and five inches long and was divided into five separate parts. Each part was numbered and dated. In normal course, four of the five separate parts would be sold, while the fifth part would be retained by the seller as a record of the plays sold. Each separate part, when sold, would constitute a policy play-
There was some dispute concerning the ownership of the printing shop, the People contending that the defendant had a proprietary interest therein, while the defendant asserted that he Avas merely an employee, receiving a wage of $80 per Aveek for his services. In order to obviate any question of fact, hoAvever, the defendant withdrew from his position and agreed that, in disposing of the charges, the court could treat Avith him as the owner of the business. The People, on the other hand, conceded that defendant had no interest whatsoever in the boli-pol booklets save to receive payment for his services in printing them; and conceded further, that examination of the booklets indicated that none of the plays had been sold.
At the close of the entire case the court granted the defendant’s motion to acquit under the count charging maintenance of an establishment for the purpose of playing policy (Penal Law, § 974). Decision was reserved on the motion to acquit on the count charging possession (Penal Law, § 975). Thus, there is squarely presented the issue of whether the printer of booklets used in policy play, and which are not susceptible of any other use, whose sole and exclusive interest therein is the payment to be received for his services as a printer, is guilty of a violation of section 975 while the booklets are still in his possession.
*326 Examination of the authorities dealing with policy furnishes no clue to the answer to this question. However, the cases dealing with book-making (People v. Pollack, 204 Misc. 64; People v. Smoke, 38 Misc 2d 939), provide both a point of beginning and a direction. And, in so doing, they point, persuasively, to the answer.
In Pollack, defendants were charged with conspiracy, policy, book-making and contriving a lottery. There, one of the defendants, while in the confines of the Jamaica race track, conveyed, by a system of signs, to another defendant stationed at the home of still a third defendant, information of the happenings at the track. These signs were picked up by the second defendant by means of powerful binoculars. Through the intermediation of still other defendants, this information was conveyed forthwith to a wire company engaged in distributing music, news and the results of sporting events over leased wires. In this manner news of racing results was conveyed to book-makers who paid the wire company the sum of $20 to $25 per day for such information. In dismissing the complaint, the court pointed out that the act of conveying the information to book-makers was not illegal. The illegality arose from the use to which the information was put by the book-makers.
In Smoke, the defendant furnished the results of horse races to book-makers by telephone. There was no evidence that the defendant engaged in book-making or wagering. Mr. Justice Pette, in his opinion reversing the judgment of conviction, took occasion to point out that “ the corpus delicti of the crime of book-making is the acceptance of bets on a professional basis ” (p. 940). Since there was no evidence that the defendant had engaged in such betting .there was no basis for the conviction.
In the case at bar the crime charged is a possessory crime. The corpus delicti is “ possession of any writing, paper or document representing or being a record of any chance, share or interest in numbers sold, given away, drawn or selected, or to be drawn or selected or in what is commonly called ‘ policy ’ or 1 the numbers game ’ ” (Penal Law, § 975). Absent a wager, however — and in the case at bar, it is conceded that no wager had been made — the boli-pol booklet is not a record of anything. It necessarily follows that possession by defendant of unplayed boli-pol booklets was not the possession contemplated by section 975 of the Penal Law.
Comparison of section 975 of the Penal Law with section 970-b fortifies this conclusion. By section 970-b the Legislature made criminal the transportation in intrastate commerce of “ any *327 record, paraphernalia, ticket, certificate, bills, slip, token, paper, writing, document, machine, apparatus or other device upon or in which is recorded or registered any bet, wager or pool-selling or book-making transaction, or which is used or to be used or adapted, devised or designed for use in * * * (c) any numbers, policy, bolita or similar game” (italics supplied). Had the Legislature intended to make possession of a boli-pol booklet to be used in future in any policy, bolita or similar game a misdemeanor, the language was readily available to convey such intention. Indeed, it could have been culled directly from section 970-b. That it did not do so is evidence of its intent not to make possession of unplayed boli-pol booklets a crime.
Accordingly, the motion to acquit the defendant of the charge of violating section 975 of the Penal Law, upon which decision was reserved, is granted, and the defendant is found not guilty.