Breitel, J.
Defendant appeals from a judgment of the Appellate Term, First Department, unanimously affirming a judgment of conviction under section 975 of the former Penal Law (possession of policy slips) after a nonjury trial in Criminal Court of the City of New York, Bronx County. Defendant was sentenced to a fine of $300 or 20 days and 10 days in the workhouse.
Two issues are presented: The sufficiency of proof to establish guilt; and the admissibility of defendant’s statement to a police officer. The officer presented himself at defendant’s apartment with a search warrant. After the officer exhibited the warrant and explained its purpose, but before the officer asked any questions, defendant volunteered to him the whereabouts of the seized contraband which grounds the conviction. Defendant contends that his statement is inadmissible because he was in ‘ ‘ custody ’ ’ when it was made and had not been given ‘ ‘ full warnings of [his] constitutional rights ” (Miranda v. Arizona, 384 U. S, 436, 445).
At trial (which was held on August 16,1966, after the date of the Miranda decision), Officer Ivan Marfisi testified that he had *51 gone to defendant’s apartment on May 26, 1966 equipped with a warrant to search both defendant and the apartment premises. Officer Marfisi had identified himself to defendant, exhibited the warrant, and ‘ ‘ explained to him what it was. ’ ’ Before the officer Pad said anything else, defendant, according to the officer, then stated, “ The booklets are in the closet in the room, on top. You are going to find them anyway.” Prior to the introduction of this testimony, counsel for defendant objected to the introduction of any statements made by defendant after the warrant had been exhibited on the ground that “custodial interrogation” had started at that point. In response to a question on the voir dire, the officer agreed that once he had entered the apartment he would have “ prevented [defendant] from leaving the premises ”. The trial court denied defendant’s motion, holding that any conversations with the defendant after the exhibition of the warrant but prior to arrest were admissible, without the Miranda warnings, because events were still at the “ inquisitorial stage.”
Continuing, the officer testified that defendant had led him to the designated closet where he found paper bags containing 4 “ series ” of mutuel horse race policy (“ Bolipol ”), each series containing 91 booklets. The officer, who was conceded to be an expert on horse race policy, gave his opinion that some of the slips from the booklets had been ‘ ‘ played ’ ’ although there was no record of that fact. On cross-examination, he explained that possession of this quantity of books indicated that defendant was a “ banker.” Pointing out that 9 books were missing from each series, which come in lots of 100, he concluded that defendant ‘ ‘ banker ’ ’ had sold these to a “ seller ’ ’ who would have then retailed them to “ players ”. There was no record of the sale from defendant ‘ ‘ banker ’ ’ to the ‘ ‘ seller ’ ’ because, according to the officer, “ A banker will not keep a portion. A banker will give the complete booklet to the seller ”.
Contending that the “ possession of unplayed boli-pol ” does not constitute a violation of section 975 of the former Penal Law, defendant argues that the officer’s conclusion that certain of the booklets had been played “ was an inference upon an inference and therefore improper. ’ ’ The expert opinion of the officer was proper because it was based on facts in evidence, the number of booklets seized, coupled with the observation that all of the series were incomplete (see People v. Crossland, 9 N Y 2d 464, *52 466-467). From these facts, the officer could conclude that the defendant was a hanker and, in the absence of any other explanation, that the missing booklets had been sold to a seller.
But there is a more fundamental ground for rejecting defendant’s contention on this issue; specifically, his argument that only the possession of “played” slips violates section 975. Such a limited construction of the statute is contradicted by its language: “Any person other than a public officer, who shall knowingly, have possession of any writing, paper, or document representing or being a record of any chance, share or interest in numbers, sold, given away, drawn, or selected, or to be drawn or selected, or in what is commonly called ‘ policy ’ or ‘ the numbers game, ’ or in the nature of a bet, wager or insurance upon the drawing or selection of, the drawn or selected, numbers of any public or private lottery, or any paper, print, writing, policy slip, or article of any kind, such as is commonly used in carrying on, promoting or playing the game commonly called ‘ policy ’ shall be guilty of a misdemeanor, except that a person possessing only records of not more than ten of his own bets, wagers, or plays shall not be so guilty. Proof of the possession of any writing, paper, document, print, slip or article of the kind mentioned herein is presumptive evidence of possession thereof knowingly. ’ ’
While the first part of the statute could be read to limit offending “ paper [s], or document[s] ” to those which are records of bets already placed, the omnibus phrase, ‘ ‘ or any paper, print, writing, policy slip, or article of any kind ’ ’ used in policy, has a broader sweep. It embraces all the paraphernalia commonly used for “policy”; and possession of such items, whether or not they record the fact that a bet has been placed, is presumptive evidence of violation of the statute (see People v. Kravitz, 287 N. Y. 475, 477-478, revg. 262 App. Div. 911, 912 [violation of § 975 grounded on possession of unsold lottery slips]; Ann. Possession of Gambling Device as Crime, 162 ALR 1188, 1189-1191; cf. People v. Lalli, 5 N Y 2d 536, 539; but see, contra, People v. Rodriguez, 49 Misc 2d 324). Hence, even if the officer’s testimony was insufficient to establish that the missing booklets had been played, defendant’s possession of the remaining booklets— articles used in playing “ policy ” — established that the statute was violated.
*53 The remaining question is whether defendant’s statement to the officer disclosing the whereabouts of the booklets was properly admitted. It will be recalled that the statement was made after the warrant had been exhibited by the officer but before he had asked any questions of defendant, let alone informed him of the so-called “Miranda rights.”
Both the parties and the trial court considered that the resolution of this issue turned on whether defendant was in ‘ ‘ custodial interrogation ” when he made his admission to the officer (Miranda v. Arizona, 384 U. S. 436, 444, supra). Defendant argues that once the officer entered the apartment and exhibited the warrant, defendant was “deprived of his freedom in [a] significant way ” — a conclusion said to be reinforced by the policeman’s testimony as to his state of mind, namely, that he would have restrained defendant from leaving—a subjective test. On the other hand, the District Attorney contends (and the trial court agreed) that defendant was not in custody because: he had not been arrested; the police investigation had not reached the “ accusatorial stage”; and the confrontation took place in defendant’s apartment, rather than in an “ incommunicado police-dominated atmosphere ” {id., p. 456).
Several recent cases tend to support the position of the District Attorney that a pre-arrest interrogation by a police officer in surroundings that are not “ police dominated ” does not constitute ‘ ‘ custodial interrogation ’ ’ requiring the Miranda “warnings” (People v. Rodney P. [Anonymous], 21 N Y 2d 1, holding that an interrogation of a named suspect outside the suspect’s home did not require the giving of the Miranda warnings; People v. Allen, 28 A D 2d 724 [rape suspect questioned in home; Appellate Division, two Justices dissenting, stressed that defendant did not know that officer would have restrained him from departing]; People v. Schwartz, 53 Misc 2d 635 [to similar effect]; Commonwealth v. O’Toole, 351 Mass. 627 [Sup. Jud. Ct. Mass., 1967 — extended, but sporadic, questioning of public official in District Attorney’s office]; United States v. Littlejohn, 260 F. Supp. 278, 282 [E. D. N. Y., 1966 — suspect stopped and questioned in car, court noted defendant “ could not have believed ’ ’ he was in custody]; United States v. Davis, 259 F. Supp. 496 [D. Mass., 1966, Wyzanski, J.— seaman questioned on shipboard, did not know customs agents had warrant]; *54 but see Miranda v. Arizona, 384 U. S. 436, 478, n. 46, supra).
While it is quite arguable that a defendant, who is shown a search warrant covering his apartment and person and then questioned, even in his own home, is deprived of his freedom in a “ significant way,” this issue need not now be decided (cf. People v. Rodney P. [Anonymous], supra). The important point is that defendant was never questioned; rather, he volunteered the whereabouts of the contraband before the officer had asked any questions (presuming that he had intended to do so). As the Supreme Court held in the Miranda opinion: ‘ ‘ In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today. ” (384 U. S., supra, p. 478)
Defendant’s inculpating remark is admissible, then, unless one is to conclude that the mere existence of the search warrant coupled with the officer’s presence amounted to a “ compelling influence ”. Such an interpretation would extend the Miranda rules beyond their avowed purpose, namely, to forbid “ custodial interrogation ’ ’ by law enforcement officials of suspects who have not been informed of certain constitutional rights. Absent interrogation, post-Miranda decisions have consistently held that voluntary or ‘ ‘ spontaneous ’ ’ statements made by suspects who were plainly in custody are admissible. For instance, in People v. Charles (66 Cal. 2d 330), a defendant was arrested for robbery and, without questioning, made admissions at a police station concerning several robberies in which he had been involved. The Supreme Court of California held that the statements were ‘ ‘ voluntary ’ ’ under Miranda standards and, therefore, admissible. And in United States v. Cruz (265 F. Supp. *55 15, 20 [W.D., Texas, 1967]) officers broke down a defendant’s door to arrest him for selling narcotics. In the ensuing search, marked money was discovered and, before he had been given the Miranda warnings, defendant blurted out that the money was his. The statement was held to be admissible. To the same effect, see People v. Kenny (53 Misc 2d 527 [unsolicited statement made by robbery suspect while entering station house]); Ballay v. People (419 P. 2d 446 [Sup. Ct., Col., 1966 — murder suspect made full confession in jail before interrogation had started]); Pitman v. United States (380 F. 2d 368, 370 [9th Cir., 1967 —bank robber, stopped by officer immediately after robbery said, ‘‘I am the fellow you are looking for; I heisted the bank”]); cf. United States v. Duke (369 F. 2d 355, 358, cert. den. 386 U. S. 934 [7th Cir., 1966—voluntary admissions in squad car after arrest for possession of narcotics not barred by Escobedo v. Illinois, 378 U. S. 478]).
Accordingly, the judgment of conviction should be affirmed.
Chief Judge Fuld and Judges Van Voorhis, Burke, Scileppi, Bergan and Keating concur.
Judgment affirmed.