HOBSON, Chief Judge.
Bob Clark Putnam, the defendant below, was found guilty of murder in the first degree with a recommendation of mercy. The court entered judgment and sentenced the defendant to life in prison. It is from this judgment and sentence that the defendant has prosecuted this appeal.
The first question presented for our determination is whether the trial court committed reversible error in admitting that portion of the testimony of Charles Perkins, a Lakeland police officer, which concerned certain-, statements made by the defendant ('before Jhe was advised or advised fully of — his constitutional rights as outlined by the United States Supreme Court in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
Officer Perkins testified that the defendant came toward him at about the time he wás pointed out as being the man who fired the shots, and stated “I am the one who did it.” Perkins then placed the defendant in the police car and started off to the station. He started to give the defendant the Miranda warning, but was interrupted by the defendant, who said, “I know my rights. I know my rights.”
On cross-examination Perkins testified that the defendant interrupted the Miranda warning by saying: “I know my rights and I won’t say anything till I get a lawyer.”
According to Officer Perkins, none of the above statements made by the defendant were in response to any questions asked. In fact, after defendant had interrupted the Miranda warning being given, Officer Perkins said nothing to him the rest of the way to the police station. He asked the defendant no questions and did not ask the defendant to make a statement. Nonetheless, after driving for a time and before reaching the police station, the defendant further remarked, “She had it coming to her.” A little later, the defendant said that he was “sorry.”
The defendant testified that he did not remember the ride to the police station and that he didn’t know about making certain remarks before the ride.
In Brown v. State, Fla.App.1969, 222 So.2d 793, Judge Carroll of our sister court of the First District had a similar question before him. In referring to the landmark decision of the United States Supreme Court in Miranda v. Arizona, supra, Judge Carroll stated at page 794:
“In that decision, however, the Supreme Court clearly pointed out the limitations of the said rule — that all statements obtained through interrogation are not inadmissible and that the fundamental import of the privilege while an individual is in custody is not ‘whether he is
*62 allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated.’ These limitations were thus expressed in the Supreme Court’s opinion:
“ ‘In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess to[1] a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding policy today.’ ”
[1] In the case sub judice, the testimony at trial was uncontradicted that the accused’s incriminating statements were completely voluntary and not made during interrogation. The fact that the accused was in custody and made statements before he had been advised of his constitutional rights is not a ground for excluding the statements. Brown v. State, supra; People v. Torres, 21 N.Y.2d 49, 286 N.Y.S. 2d 264, 233 N.E.2d 282 (1967); Miranda v. Arizona, supra, and United States v. Cone, 2 Cir., 354 F.2d 119 (1965). Therefore, no reversible error has been made to appear in this regard.
Appellant’s next point urges error in the lower court’s refusal to direct a verdict upon the issue of insanity.
Appellant asserts that while all men are presumed sane, the presumption vanishes when there is testimony of insanity sufficient to present a reasonable doubt as to the sanity of the defendant and he is entitled to an acquittal if the State does not overcome the reasonable doubt. We agree that this is a correct statement of the law in this jurisdiction.[1]
It also follows that if there is sufficient evidence in the record to overcome the reasonable doubt as to the defendant’s sanity the issue of sanity is for the jury. Norman v. State, Fla.App.1963, 156 So.2d 186.
In the case sub judice, the defendant placed three expert witnesses on the stand. These experts, a clinical psychologist and two medical doctors who were also psychiatrists, all testified for various reasons that the defendant in their opinion could not distinguish right from wrong at the time he committed the act in question.
A State’s medical expert, Dr. Russ, a psychiatrist, directly contradicted the defense experts by his opinion that the defendant did know right from wrong at the time of the offense.
In addition to the conflict in testimony of the medical experts the jury had lay evidence before it which could be considered in its determination of the issue of sanity. Norman v. State, supra. The jury’s finding that the defendant was sane is supported by the evidence.
We have carefully reviewed the instructions given the jury and hold that, when considered in their entirety, they *63 fairly and correctly state the law applicable to the issues presented to the jury.
In view of the foregoing, the judgment and sentence entered herein is
Affirmed.
PIERCE and McNULTY, JJ., concur.

. Brady v. State, Fla.App.1966, 190 So. 2d 607; Byrd v. State, Fla.App.1965, 178 So.2d 886; Norman v. State, Fla.App. 1963, 156 So.2d 186, and Farrell v. State, Fla.1958, 101 So.2d 130.